In the Matter of the Petition of the METROPOLITAN TRANSIT COMPANY OF THE CITY OF NEW YORK to Determine the Amount of Compensation to be Paid the Mayor, etc., of said City.

The privilege given to the M. T. Co. under the act creating it (Chap. 833, Laws of 1872), " to construct and operate certain railroads in the city of New York," having been defined and limited by the act, it was bound to exercise that privilege, if at all, according to the terms in which it was conferred; it could not take part and reject the rest.

As a condition upon which the court could be asked to intervene in its favor to enable it to acquire lands and street rights, the company was obliged to show, under oath, that it is its ' intention, * * * in good faith, to construct and finish a railroad from and to the places named * * * in its articles of association." (Laws of 1850, chap. 140, § 14.)

In the petition presented by said company for the appointment of commissioners of appraisal to determine the amount to be paid to the city for the use of the streets included in the routes of said company, it was stated that it was "the intention of said company, in good faith to construct, operate and maintain a railroad on the lines mentioned in said act." The city answered, among other things, denying that it was the intention of the company to construct and operate a road as mentioned in said act of 1872. On the hearing, after the company had offered evidence on the question of intent, the city offered evidence to contradict it and to controvert the expressed intent. This was excluded, the court holding that the application was sufficient proof of the intent. *Held*, error.

*It seems* that, if it had not been alleged in the petition and put in issue by the answer, that the company in good faith intended to build the road, proof that it did not so intend would have been proper and would have shown " cause against the granting of the prayer of the petition." (Laws of 1850, chap. 140, § 15.)

It appeared from the petition that the board constituted by said act of 1872 to locate the lines of the three branches authorized thereby made the location, and appraisers were asked for in relation to the streets affected, and also

to streets affected by the main line located by the act itself. Subsequently, by order of the court, the petitioners were permitted to have the hearing proceed upon a supplemental petition, by which it appeared that after the passage of the act of 1881 (Chap. 636, Laws of 1881), amending the act of 1872, the board then consisting of different persons from those who composed it when the first location was made, made new locations of the same routes, in many respects, both as to the main route and the branches different from the routes described in the act of 1872 and in the first location. *Held*, that, so far as the "main line" is concerned, neither board had power to name the streets through which it should pass, or change or omit any portion of the line as located by the act; that the company, if it took any part of the franchise as to it, was bound to take it as given, and as to the changed location of that line the court had no jurisdiction; also, that, as the location of the main line could not be sustained, that of the branches fell with it; that if the act of 1881 was intended to give the company rights in streets other than those named in the act of 1872, it was in contravention of the provision of the state Constitution, as amended in 1874, which prohibits any law authorizing the construction of a street railroad, except upon the consent of land-owners and the local authorities or the order of the court (art. 3, § 17); that this prohibition applies to a part of as well as to a complete railroad; but *held*, that no such intention was expressed in or could be implied from the act.

(Argued October 19, 1888; decided January 15, 1889.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made May 18, 1888, which reversed an order of Special Term appointing commissioners of appraisal to fix the compensation to be paid by the petitioner to the city of New York for the use of certain streets for its railroads and which denied the prayer of said petition.

The material facts are set forth in the opinion.

*Esek Cowen, George W. Wingate* and *J. Alfred Davenport* for appellant. The General Term erred in holding that the Special Term was wrong in excluding testimony offered for the purpose of showing that the petitioner had not sufficient financial ability to build the road. (Laws of 1850, chap. 140, § 14; Laws of 1853, chap. 53, § 1; Laws of 1867, chap. 515, § 1.) The law of 1881, in ratifying the power of the board and the right of the petitioner to build its roads on the routes

finally adopted and completed by the board of engineers, was not in conflict with any provision in the Constitution of this state. (*In re N. Y. El. R. R. Co.*, 70 N. Y. 337, 338, 369, 372; *People* v. *B.*, *F. & C. I. R. R. Co.*, 89 id. 86; *In re Gilbert El. R. R. Co.*, 70 id. 369; *Gilbert El. R. R. Co.* v. *Anderson*, 3 Abb. N. C. 459; *People ex rel. Newcomb* v. *McCall*, 94 N. Y. 587; *Moran* v. *Lydecker*, 11 Abb. N. C. 302; *People* v. *F. & R. R. Co.*, 12 Week. Dig. 375; 24 Hun, 529; Wood on Railway Law, 759; *Neal* v. *P. & C. R. R. Co.*, 2 Grant's Cas. [Penn.] 137; *In re Poughkeepsie Bridge*, 108 N. Y. 493.) The length of the branches located by the board of engineers is immaterial, if their direction was such as was authorized by the act. (*In re N. Y. El. R. R. Co.*, 70 N. Y. 328–341; *Fall River Iron Works* v. *O. C. & F. R. R. R. Co.*, 5 Allen [Mass.] 221; *A. & P. R. R. Co.* v. *St. Louis*, 66 Mo. 229.) There can be no question here of any invasion by us of private rights. (*Lahr* v. *Met. E. R. R. Co.*, 104 N. Y. 268; *Davis* v. *Mayor, etc.*, 14 id. 506; *N. Y. C. Co.* v. *Mayor, etc.*, 104 id. 36.) Unless in the act of incorporation is to be found some provision for the cessation of corporate existence, no cause or reason exists for finding that this company is not entitled to proceed with the work for which it was organized. (*Michles* v. *Rochester City Bk.*, 11 Paige, 118, 129; *Astor* v. *Arcade R. R. Co.*, Special Term Dec. 1886; 105 N. Y. 119; *N. Y. C. R. R. Co.* v. *Mayor, etc.*, 104 id. 1.) By the passage of the act of 1881 the legislature waived all causes of forfeiture by distinctly recognizing this corporation and its rights. (*In re N. Y. El. R. R. Co.*, 70 N. Y. 337; *Davis* v. *Gray*, 16 Wall. 203; *Crocker* v. *Crane*, 21 Wend. 211; *B. W. & N. R. R. Co. Case*, 75 N. Y. 335; *In re Kings Co. El. R. R. Co.*, 105 id. 120.) The company could proceed to acquire both the right of way and to construct in a single proceeding, or it could divide them. But they were both proceedings to acquire the right of way. (*In re Met. T. Co.*, 45 Hun, 164, 165.) The rapid transit act has no application. The " exclusive power " given by that act to the board of commissioners to designate routes was to designate the routes

which they considered that the corporation they were about to form should operate. (Laws of 1881, chap. 485; *Van Denburgh* v. *Village of Greenbush*, 68 N. Y. 1, 4.) The demand upon the city through the comptroller is sufficient if any demand was, in fact, essential before instituting proceedings. (*In re S. R. T. Co.*, 16 Abb. N. C. 158; *Bunge* v. *Koope*, 48 N. Y. 228.) The supplementary act of 1881 was a distinct recognition and ratification of the existence and organization of the corporation of the Metropolitan Transit Company. (*In re N. Y., L. & W. R. R. Co.*, 99 N. Y. 18.) The power given by the act incorporating petitioner to construct and operate an elevated railroad in New York city removes the matter from the exercise of any discretion by the court. (*N. Y. C. Co.* v. *Mayor, etc.*, 104 N. Y. 1; *In re P. P. & C. I. R. R. Co.*, 67 id. 371–376.) It is immaterial whether the board of engineers located a portion of any route in parts of streets not authorized by law, or in streets occupied by the Manhattan Elevated. (*In re Kings Co.*, 105 N. Y. 98; *People* v. *N. Y. R. R. Co.*, 45 Barb. 573; *Waterbury* v. *D. D. Co.*, Id. 388.)

*George Hoadley* and *Albert Reynaud* for appellant. A corporation does not lose its life by any wrong-doing, or non-doing, until judicially deprived of it by proceedings therefor. (*Day* v. *O. R. R. Co.*, 107 N. Y. 129; *In re N. Y. El. R. R. Co.*, 70 id. 337–338; *In re Kings Co. El. R. R. Co.*, 105 id. 119; *Denike* v. *N. Y. Cement Co.*, 80 id. 599; *In re Steam Transit Co.*, 78 id. 529; *People* v. *Walker*, 17 id. 502; *People* v. *Manhattan*, 9 Wend. 380; *Bk. of Niagara* v. *Johnson*, 8 id. 654; *B. & A. R. R. Co.* v. *Carey*, 26 id. 75; *In re B. W. & N. R. R. Co.*, 72 id. 245; *B. S. T. Co.* v. *City of Brooklyn*, 78 id. 524; *L. G. R. R. Co.* v. *Rainey*, 7 Cold. [Tenn.] 432; *State* v. *F. N. H. T. Co.* 15 N. H. 165; *Bk. of Gallipolis* v. *Trimble*, 6 B. Mon. [Ky.] 601; *Grand Gulf Bk.* v. *Archer*, 8 S. & M. [Miss.] 151; *Pearce* v. *Olney*, 20 Conn. 557; *Receivers* v. *Renick*, 15 Ohio, 322; *Boston Glass Co.* v. *Langdon*, 24 Pick. 52; *Comm.* v. *U. F.*

*Ins. Co.*, 5 Mass. 230; *Baker* v. *Backus*, 32 Ill. 79; *Atchafalaya Bk.* v. *Dawson*, 13 La. 497; *Cahill* v. *Kalamazoo Ins. Co.*, 2 Day [Mich.] 124; *N. J. S. R. R. Co.* v. *L. B. Co.*, 39 N. J. L. 35; *Day* v. *Stetson*, 8 Me. 372; *C. C. Co.* v. *R. R. Co.*, 4 Gill. & J. 1; *Bk. of Missouri* v. *Merchants' Bk.*, 10 Mo. 123; *Gilman* v. *Greenpoint Sugar Co.*, 4 Lans. 482; *Trustees Vermont Soc.* v. *Hills*, 6 Cow. 23; *Kishacoquillas* v. *McConaby*, 16 S. & R. [Pa.] 140; *Mackall* v. *C. C. Co.*, 94 U. S. 308; *Robinson* v. *London Hospital*, 21 Eng. L. & E. 371; *V. R. R. Co.* v. *V. R. R. Co.*, 34 Vt. 32; *C. R. R. Co.* v. *Bailey*, 24 id. 465; *State* v. *Fagin*, 22 La. Ann. 545; *Crump* v. *U. S. Co.*, 7 Gratt. 352; *Chester Glass Co.* v. *Dewey*, 16 Mass. 102; *Whipple* v. *Christian*, 80 N Y. 526; *In re Curser*, 89 id. 401; *In re D. & H. C. Co.*, 69 id. 209; *Vandenburg* v. *Village of Greenbush*, 66 id. 1; *People* v. *Palmer*, 52 id. 83; *In re Central Park*, 50 id. 493; *Village of Gloversville* v. *Howell*, 70 id. 287; *People* v. *Quigg*, 59 id. 83; *In re Evergreens*, 47 id. 216; *Baird* v. *Mayor, etc.*, 95 N. Y. 567; *Ex. Pet. Co.* v. *Lacey*, 63 id. 426; *Dewey* v. *Central Mfg. Co.*, 42 Mich. 399; *Isham* v. *Bennington Co.*, 19 Vt. 230; *Nichols* v. *Bertram*, 3 Pick. 342; *Felt* v. *Felt*, 19 Wis. 193; *State* v. *Goetz*, 32 id. 363.) The recognition and reaffirmation of the company's rights in the act of 1881 was a waiver of any cause of forfeiture. (*In re N. Y. El. R. R. Co.*, 70 N. Y. 338; *People* v. *Manhattan Co.*, 9 Wend. 398; *People* v. *F. P. R.*, 27 Barb. 460; *C. C. R. R. Co.* v. *Twenty-third St. R. R. Co.*, 54 How. Pr. 186; *People* v. *Phœnix Bk.*, 24 Wend. 431; *State* v. *F. N. H. T. Co.*, 15 N. H. 162; *Atty.-Gen.* v. *P. R. R. Co.*, 16 id. 470; *C. C. Co.* v. *B. R. R. Co.*, 4 G. & J. 127; *Atchafalaya Bk.* v. *Dawson*, 13 La. 497; *Lumpkin* v. *Jones*, 1 Ga. 30; *Commonwealth* v. *U. Ins. Co.*, 5 Mass. 30; *L. G. R. Co.* v. *Rainey*, 7 Cold. [Tenn.] 420; *State* v. *N. O. Gas Co.*, 2 Rob. 529; *People* v. *Oakland Bk.*, 1 Doug. [Mich.] 282; *Atty.-Gen.* v. *D. R. R. Co.*, 27 N. J. Eq. 1; *Atty.-Gen.* v. *Eastlake*, 11 Hare, 228; *Atty.-Gen.* v. *Christ's Hospital*, 3 M.

& K. 344; *Atty.-Gen.* v. *Beverly*, 6 De G. & M. 268; *Strong* v. *Stebbins*, 5 Cow. 210; *Myers* v. *Foster*, 6 id. 569; *Harris* v. *White*, 81 N. Y. 544; *In re Kings Co. El. R. R. Co.*, 105 id. 99; *Standen* v. *Univ. of Oxford*, W. Jones. 17; *McFarland* v. *State Bank*, 4 Ark. 410; *Felt* v. *Felt*, 19 Wis. 193; Bishop on Written Laws, 126; *Hawkins* v. *Mayor, etc.*, 64 N. Y. 18; *In re Curser*, 89 id. 401; *State* v. *Bacon Co.*, 41 Mo. 453; Bishop on Written Laws, 152–156; *Thames* v. *Hall*, 3 C. P. 415; *Gregory's Case*, 6 Co. 19; *Ex parte Smith*, 40 Cal. 914; *Rounds* v. *Waymart*, 31 Smith [Penn.] 395; *Brown* v. *Comrs.*, 9 Harris [Penn.] 37; *Covington* v. *E. St. Louis*, 75 Ill. 548; *M. R. R. Co.* v. *State*, 20 Ala. 573; *Beriden* v. *Barbin*, 13 La. Ann. 498; *Ellis* v. *Batts*, 26 Tex. 703; *Luke* v. *State*, 5 Fla. 185; 44 Conn. 105.) The act of 1881 was constitutional. (*In re N. Y. E. R. R. Co.*, 70 N. Y. 338; *In re Gilbert El. R. R. Co.*, Id. 369; *People* v. *B. F., etc., R. R. Co.*, 89 id. 86; *Gilbert El. R. R. Co.* v. *Anderson*, 3 Abb. N. C. 455; *In re Kings County El. R. R. Co.*, 105 N. Y. 99.) If the board's first act should be deemed incomplete and ineffectual, the legislature had a clear right to direct its completion. (*Palmer* v. *Yates*, 3 Sandf. 151; *Delafield* v. *Ill.*, 26 Wend. 26; *McLean* v. *Drew*, 4 Bing. 722; *Williams* v. *Town of Duanesburg*, 66 N. Y. 137; *People* v. *Mitchell*, 35 id. 551; *Town of Duanesburg* v. *Jenkins*, 57 id. 177; *Rogers* v. *Stevens*, 86 id. 625.) The function of the board was purely administrative, and a grant of fresh power was simply one of administration; and if the administration authorized was purely of a right previously existing, it was clearly no grant whatsoever of a new and original right to lay tracks. (*In re N. Y. El. R. R. Co.*, 70 N. Y. 338, 343; *Gilbert El. R. R. Co.* v. *Anderson*, 3 Abb. N. C. 454.) Every presumption is in favor of the constitutionality of an act of the legislature. Every intendment is in favor of its validity, and every doubt must be solved to sustain it. To doubt is to affirm it. (*In re Gilbert El. R. R. Co.*, 70 N. Y.

367; *People* v. *Briggs*, 50 id. 553; *People* v. *Supervisors*, 17 id. 235; *Weismer* v. *Village of Douglas*, 64 id. 91; *People* v. *Kelly*, 76 id. 489; *People* v. *Comstock*, 78 id. 361; *Kerrigan* v. *Force*, 68 id. 385.) The board's action in laying out the routes was competent and within its powers. (*McCluskey* v. *Cromwell*, 11 N. Y. 601; *People* v. *Suprs. of Greene Co.*, 13 Abb. N. C. 421.)

*Elihu Root* and *Thomas P. Wickes* for respondent. When an order is such that it may be denied by the lower court solely in the exercise of its discretion, this court will not review its determination, unless it appears in the order itself that the decision in the court below was, in fact, not based upon the exercise of that discretion. (*Clarke* v *Lourie*, 82 N. Y. 508; *Brooks* v. *M. N. C. & Co.*, 93 id. 647; *Fisher* v. *Gould*, 81 id. 228; *Nat. Park Bk.* v. *Whitmore*, 104 id. 297; *F. L. & T. Co.* v. *B. & M. Tel. Co.*, 109 id. 344; *In re Kings Co. El. R. R. Co.*, 105 id. 106; *N. Y. Cable Co.* v. *Mayor, etc.*, 104 id. 13.) When a charter is given to a corporation to lay its tracks over a certain route, an attempt to lay its tracks over any other route is unauthorized and void. (*People* v. *H. R. R. R. Co.*, 2 Abb. Pr. [N. S.] 249; *Negus* v. *City of Brooklyn*, 10 Abb. N. C. 180; *People* v *N. Y. C. & H. R. R. R. Co.*, 26 How. Pr. 44; *C. D. & V. R. R. Co.* v. *City of Chicago*, 9 W. Rep. 493; *Comm.* v. *E. R. R. Co.*, 27 Penn. St. 339; 67 Am. Dec. 471.; *Dist. of Col.* v. *B. & P. R. R. Co.*, 114 U. S. 453; *Mayor, etc.*, v. *Broadway R. R. Co.*, 97 N. Y. 281; *D. & H. C. Co.* v. *N. Y. E. R. R. Co.*, 9 Paige, 323; *Mason* v. *B. C. & N. R. R. Co.*, 35 Barb. 373, 381.) The petitioner's right to exercise its corporate powers has wholly ceased by reason of non-use and delay. (*In re B. W. & N. R. R. Co.*, 72 N. Y. 245; *In re Kings Co. El. R. R. Co.*, 105 id. 97.) The Metropolitan Transit Company has no power to make the present application, nor has this court the power to grant the same, for the reason that chapter 636 of the Laws of 1881 is violative of section 18 of article 3 of the Constitution of the state of New

York. (*In re B W. & N. R. R. Co.*, 75 N. Y. 335; *Farnham*
v. *Benedict*, 107 id. 177; *In re N. Y. D. R. Co.*, 42 Hun,
621; 11 St. Rep. 753.)   Chapter 636 of the Laws of 1881,
under which the petitioner claims in part to be organized, and
under which it claims to have duly taken certain proceedings
in pursuance of the power and authority alleged to have been
conferred upon it by said act, is violative of section 16 of
article 3 of the Constitution of the state of New York.
(*People ex rel. McConville* v. *Hills*, 35 N. Y. 499; *Gaskin*
v. *Meek*, 42 id. 186; *People* v. *Suprs. of Chautauqua*, 43 id.
10; *Huber* v. *People*, 49 id. 132; *In re Assessments, etc.*, 60
id. 398; *City of Watertown* v. *Fairbanks*, 65 id. 588; *In re
El. R. R. Co.*, 70 id. 327; *In re Sackett St.*, 74 id. 95; *In re
Blodgett*, 89 id. 392; *In re Paul*, 94 id. 497; *Tingue* v. *Vil.
of Port Chester*, 101 id. 294.)   The act of 1881 could not,
under the constitutional amendments of 1875, confer upon
the engineers any new power to locate a railroad in a street.
(*B. W. & N. Case*, 75 N. Y. 335; *Farnham* v. *Benedict*, 107
id. 159.)   The Transit Company had not, under the act of 1872
or under the statutes of the state, power to take the streets
under the general laws of the state.   (*Lahr* v. *Met. El. R. R.
Co.*, 104 N. Y. 268; Mills on Eminent Domain [2d ed., 1888]
§ 46; *In re Buffalo*, 68 N. Y. 167–171; *P. P. & C. I. R.
R. Co.* v. *Williamson*, 91 id. 552–561; *Ex parte Manhattan
Co.*, 22 Wend. 633; *Mayor, etc.*, v. *B., etc.*, *R. R. Co.*, 97
N. Y. 275; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659–666;
*Charles River Bridge Case*, 11 Pet. 496, 504, 505.)   Because
the Transit Company does not intend in good faith to build its
main line, it has no right to use the streets of the city for its
so-called branches.   (*People* v. *A. & V. R. R. Co.*, 24 N. Y.
261, 267; Laws of 1850, chap. 140, § 14; *Cable Co.* v. *Mayor,
etc*, 104 N. Y. 1; *Goelet* v. *Met. Transit Co.*, 48 Hun, 520;
*Works* v. *J. R. R. Co.*, 5 McLean, 425, 431.)   The board of
engineers created by section 4 of the act of 1872, had no power
delegated to them to appropriate any streets of the city of New
York for the branches which they were authorized to locate.
(Laws of 1850, chap. 224; Laws of 1872, chap. 834: 2 id.

chap. 885.) The engineers, in locating the alleged branch on Broadway, exceeded the powers conferred upon them by the act of 1872, even though it be assumed that they had authority to appropriate streets. (Laws of 1873, chap. 837; Laws of 1875, chap. 606; Laws of 1880, chap. 417; Laws of 1881, chap. 485; Laws of 1882, chap. 410, § 1946.) Power conferred upon a subordinate body like this board of engineers, when once exercised, is used up and cannot again be exercised. (*Jermaine* v. *Waggener*, 1 Hill, 279, 284; *Woolsey* v. *Tompkins*, 23 Wend. 324; *Clark* v. *Norton*, 58 Barb. 434, 436; *People* v. *Supervisors of Schenectady*, 35 id. 408; *In re Mt. Morris Square*, 2 Hill, 14; *People* v. *Lynde*, 8 Cow. 133; *People* v. *Justices of the Marine Court*, 12 Wend. 220; *In re Third St.*, 6 Cow. 571; *U. S.* v. *Leng*, 18 Fed. Rep. 14, 25; *Negus* v. *Brooklyn*, 10 Abb. N. C. 185; *Oakley* v. *Trustees of Williamsburgh*, 6 Pai. 262.) The whole West street, Tenth avenue and Boulevard branch location is void, because the legislature has expressly prohibited the building of any steam railroad upon the Boulevard. (Laws of 1882, chap. 410, § 1945.) The power, if any, of the board of engineers to locate a branch along Broadway was cut off by the amendment to the Constitution that went into effect January 1, 1875. (*Negus* v. *Brooklyn*, 10 Abb. N. C. 185, 186.) The power, if any, of the board of engineers to locate a branch on Broadway was repealed by the Rapid Transit Act, chapter 606, Laws of 1875, passed June 18, 1875. (*Farnsworth* v. *M. & P. R. R. Co.*, 92 U. S. 49, 66; *Henderson* v. *C., etc., R. R. Co.*, 20 Am. & Eng. R. R. Cas. 542.) All the Transit Company's rights and franchises have been forfeited by operation of law. (Laws of 1846, chap. 155; *B. W. & N. R. R. Co. Case*, 72 N. Y. 246; 75 id. 336; *B. S. T. Co.* v. *City of Brooklyn*, 78 id. 524; *B. W. & N. Co. Case*, 72 id. 250; *Kerr* v. *Dougherty*, 79 id. 327, 336.) Chapter 833 of the Laws of 1872 is unconstitutional and void, because, so far as it applies to the taking of streets for a railroad, it authorizes the taking of the property of abutting

owners without compensation. (*Lahr* v. *M. E. R. R. Co.*, 104 N. Y. 268–292; Cooley on Con. Lim. 179; *Warren* v. *Mayor*, etc., 2 Gray, 84; *C. B.*, etc., *R. R. Co.* v. *Atchison R. R. Co.*, 28 Kan. 453; *In re N. Y. Dis. R. Co.*, 42 Hun, 621; 107 N. Y. 42; *Meshmier* v. *State*, 11 Ind. 482.)

Danforth, J. By chapter 833 of the Laws of 1872, the legislature created a body corporate under the title of "The Metropolitan Transit Company." Its capital stock was fixed at $5,000,000, with liberty to the stockholders to increase it, but accompanied by a provision that "work on the road authorized by the act, should not be commenced until ten per cent of the capital stock shall have been paid in, in cash." The corporation so created was endowed with all the powers and privileges, and made subject to all the provisions of the act of 1850 (Chap. 140), relating to railroads, so far as the same were consistent with the provisions of the act first mentioned (Laws of 1872, chap. 833), and authorized to construct a railroad on the line described in the act, and beneath and over certain specified streets in the city of New York. The act indicates the streets and routes, forming a main line and branches, and the use and occupancy of the streets are limited by its provisions. (§§ 3, 4.) The route or line described was to begin at Broadway, opposite Bowling Green, and terminate, after passing though the enumerated streets, at the "Harlem River," and three branches, the first from a point south of Forty-second street on and to connect with the line described in the act above referred to "Easterly and northerly to the Grand Central Depot at Forty-second street and Fourth avenue." The act also provided, that "the exact location of the lines of the three branches heretofore authorized shall be such as is deemed most practicable and best calculated to promote the public interests, by a board to be composed of the state engineer and surveyor, the chief engineer of the Croton aqueduct and an engineer to be appointed by the corporation hereby created. The necessary surveys and maps for determining the lines of said branches shall be made under the direction of the said board of engineers, at the expense of the corporation hereby created."

The line prescribed in some instances passed though private property, and the act declared that the road should be constructed upon property "to be purchased or acquired," and that the corporation might purchase and occupy a space not more than fifty feet in width upon the lines indicated, and might also make the necessary connections, stations, etc., and acquire land necessary for those purposes; and if unable to do so by purchase, through inability to agree with the owners, it might obtain title " in the manner and by the proceedings prescribed for acquiring the title to real estate for railroad purposes, in and by the general railroad law of this state (Laws of 1850, *supra*), and the acts amendatory thereof, all the provisions of which, relating to acquiring the title to real estate, " were by the act extended so as to apply to any property, rights, franchises or interests required in the construction of said railroads, except that in the petition to the Supreme Court, in said proceedings, it shall only be necessary to describe the real estate, property, rights, franchises or interests which said corporation seeks to acquire; to aver that the same are required for the construction or operation of the railroads authorized by this act, describing particularly the proposed route of said roads, and to allege that said corporation has not been able to acquire title to said property, rights, franchises or interests, and the reason of such inability."     *     *     *     It further provides "that it shall not be necessary that the petition to the court shall make any allegation of or reference to any corporations, capital stock, surveys, maps, or the filing of any certificate of location." It also provides that, "where the route or routes of the railroads herein authorized to be constructed and operated shall be along any street, avenue or public place, the said corporation shall compensate the corporation of the city of New York for such use or occupancy of said streets, avenues or public places; the amount of such compensation to be determined in the same manner as damages to private property." The corporation so formed was given (§ 12) six months from the time of " the first election of directors within which to commence the construction of the said railways, and one year thereafter

within which to complete at least one of said railways to the Harlem river, and one branch road to the Grand Central depot at Forty-second street and Fourth avenue."

On the 28th of December, 1875, the company so formed presented a petition to the Supreme Court, stating, among other things, "that it is the intention of said company, in good faith, to construct, operate and maintain a railroad on the lines mentioned in the said act, and the necessary sidings, switches, depots and workshops, and to convey passengers, freight, and property in cars propelled by steam power, as mentioned in said act;" that it desires to ascertain the amount which, under its charter, must be paid to the city in relation to the construction of its road in such portions of the streets as are required for the described routes, referring to the act of 1872, and stating that they have been unable to agree with the city authorities as to the required amount, and they ask for the appointment of commissioners of appraisal to ascertain the same. The hearing on this petition was adjourned from time to time at the petitioner's request, to March 5, 1886, and then, upon condition that no further postponement should be asked for, it was, by consent of the corporation counsel, and at request of petitioner, adjourned to March 8, 1886. On the 23d of April, 1887, the petitioner was, by the order of the Special Term, permitted to have the hearing go on upon a supplemental petition, which brought before the court an act of the legislature, passed in 1881 (Chap. 636), amending the act (*supra*) of 1872, and which also stated a location of routes by the board of engineers, differing from those first determined upon. The act of 1881 authorized the filing of maps, extended the time within which to complete surveys, and declared that the "time required in section 12 of said act for the commencement of the construction of said roads shall be deemed not to have commenced until the making and filing of said maps, which shall be done within twelve months after the passage of the act."

The supplemental petition reiterated the prayer for the appointment of commissioners of appraisal, and the city

answered, putting in issue many of the allegations of the petitioner and denying, among other things, that it is the intention of the company to construct and operate a road as mentioned in the act of 1872, alleging that "the petitioner does not control sufficient pecuniary means to successfully perform the work proposed; that neither the petitioner's capital or credit is sufficient to enable it to commence, carry on or complete the construction of its proposed railroads, or to properly compensate the public and private interests which will inevitably suffer in the building and operation of its proposed railroads," and alleged that the company did not begin the construction of the road as required by section 12 of the act of 1872, or spend ten per cent of its capital thereon, or finish its road, or put it in operation within the times limited by chapter 775 of the Laws of 1867, or of section 47 of the General Railroad Act, passed April 2, 1850, as amended by chapter 775 of the Laws of 1867; that its right to exercise its corporate powers under the said acts had wholly ceased by reason of non-user and delay; that in no event is there any right in the company, under said acts, or otherwise, to acquire any right of way, or any lands in said city, or to build any such railroad as it proposes along the following named streets, to wit.: Broadway, in the city of New York, and the streets known as the Boulevards in the city of New York; that the act of 1881 (Chap. 636) is void as violating section 16 of article 3 of the Constitution of the state; that neither in the title of said act of 1881 nor in the body of the said act was any power or authority given to locate any new route or routes for the lines of the petitioner's proposed railroad; that acting in pursuance of authority alleged to have been conferred by the said act, the board of engineers mentioned in the said act located and adopted new routes.

Upon the hearing of the petition it appeared that the first election of directors was held on the 3d of July, 1874, and the secretary of state issued a certificate of the organization of the company. Among other things, the city, upon the objections raised by its answer, offered evidence to show the

inability of the company to build the road, and other circumstances to controvert its expressed intention to do so. The judge held that the application was sufficient evidence of that intent, and excluded the evidence.

We agree with the General Term in the conclusion that, in so ruling, the learned judge at Special Term erred. Good faith on the part of the company, so far, at least, as intention to build and complete its road is concerned, is made essential by the act of 1850 (Chap. 140, § 14), and there is no reason to suppose that the legislature, in giving life to this company, with power qualified in some degree, at least, by the provisions of that act, so far as they relate to the acquisition of land, or rights against the will of the owner, intended to dispense with this important condition. It was a fact stated, and being stated, was subject to denial and might be disproved. If it had not been stated, and it had appeared in evidence that such intention did not exist, that the company did not intend to construct and finish the described road, the party affected by its proceedings would have "shown cause against granting the prayer of the petition," and any further action would have been idle. (Act of 1850, § 15, *supra*.) Moreover, the petitioner gave evidence to sustain the alleged intention, and that offered by the city was competent in answer to it. This difficulty might be got along with upon another application or rehearing. There are others of a fatal and conclusive character. One of these is found at the starting point of the proceedings in question. The privilege given to the Metropolitan Transit Company was defined and limited by the act (Laws of 1872), and it was bound to exercise the privilege, if at all, according to the terms in which it was conferred. It could not take part and reject the rest. As a condition upon which the court could be asked to intervene in its favor, the company must show, under the solemnity of an oath, that it is its "intention, in good faith, to construct and finish a railroad from and to the places named for that purpose in its articles of association." (Laws of 1850, *supra*.)

The statute describes the streets through which the line may pass, authorizes branches connecting with it, but, as above stated, leaves their exact location to be fixed by a board of engineers. It appears from the petition that the board acted in March, 1875, locating the lines of the three branches, and the first petition above referred to was presented to the court, and appraisers asked for in relation to the streets affected by those lines. It also embraced the main line, as described in the act. Subsequently, July 11, 1882, the board, but consisting of different persons, made new locations of the same routes, in many respects materially different from the routes described in the statute, and materially different from those described in the first location, both of the main line and branches, by the board organized under the act of 1872. The supplemental petition embraces these last locations.

*First.* So far as the main line, or "the line," as it is called in the statute, is concerned, neither board had jurisdiction to name the streets through which it should pass. It is defined by the statute, and the statute itself declares that the corporation shall "have no right to acquire the use or occupancy of any of the streets or public places of the city of New York, under the provisions of said acts, or by any agreement or grant of the city authorities, except such use or occupancy as is granted or provided for in this act, and except such temporary rights and privileges, during the period of constructing said railways authorized in this act, as the proper authorities may grant to said corporation to facilitate such construction."

No discretionary power is vested in the board as to this line, and the company, if it took any part of the franchise as to the main line, were bound to take it as given. It could not operate over one street and avoid another, nor could it substitute a street not named. As to that line, so described, the court had no jurisdiction.

*Second.* The learned counsel for the appellant contends, however, that if the location of the main line cannot be sustained as within the authority of the act of 1872, the branches need not

also fail.   The rule I have referred to forbids this conclusion. A charter must be accepted or rejected *in toto*.   If accepted, it must be taken as offered by the legislature.   The one under which the claim is made contains no permission, and confers no power to accept in part and reject in part.   (*People* v. *Albany & Vt. R. R. Co.*, 24 N. Y. 261.)

It follows that the branch line locations are ineffectual. The statute has in view a main line and branches, the whole accommodating the public over a large territory.   A branch or two of these disconnected from the trunk might be of value to the owner, but such a gift was not described in the statute, and there is no reason to suppose it was intended. The appellant relies largely upon the act of 1881 (Chap. 636), as curing many of the difficulties suggested by the other side. If that act was intended to give the company rights in streets other than those named in the act of 1872, it could not stand against the Constitution, which prohibits any law authorizing the construction of a street railroad, except upon the consent of owners of property and the local authorities or the order of the court.   (Const. amend'nt. 1874.)   This excludes a part of as well as a complete railroad.   But we find no such intention expressed in the statute, nor words from which an implication to that effect can be drawn.

Other questions have been presented by counsel for the appellant as against the objections of the respondent and argued with great ability and force.   We do not think it necessary to discuss them, for in our opinion they would require no different conclusion from that which must follow the views above expressed.

We think the order of the court below was right and should be affirmed.

All concur, except GRAY, J., not sitting.

Order affirmed.