THE BROOKLYN AND ROCKAWAY BEACH RAILROAD COMPANY, Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY and THE NEW YORK, BROOKLYN AND MANHATTAN BEACH RAILWAY COMPANY, Appellants.

*Grant of a franchise, construed in favor of the People — the franchise must be accepted as a whole — duty of a railroad company to begin the construction of its road within five years — contract by it with another company to construct part of the former's road and transport passengers over it — it operates as an abandonment of the franchise — the contract cannot be enforced.*

The language of an act conferring a franchise or special privilege upon a railroad company must be construed most favorably to the People, and all reasonable doubts in construction must be resolved against the railroad company.

A franchise to operate a railroad between two given points is not satisfied by the construction and operation of a portion of such line and a complete abandonment of the remainder. The franchise must be accepted or rejected *in toto.*

Chapter 759 of the Laws of 1871, which authorized the Brooklyn and Rockaway Beach Railroad Company to extend its railroad to Hunter's Point, afterwards Long Island City, and provided, "All the provisions of the act under which said company is organized, and the several acts amending the same, shall apply to said extension and to the construction, operation and maintenance of said sidings, turnouts and branch roads, and to acquiring title to any real estate required by said company in making the same," when construed in connection with section 47 of the General Railroad Law (Laws of 1850, chap. 140, as amd. by Laws of 1867, chap. 775), under which act of 1850 the Brooklyn and Rockaway Railroad Company was organized, which provided that, if any corporation formed under the act should not begin the construction of its road within five years after the articles of association were filed, its corporate existence should cease, imposed upon the railroad company the duty of exercising the franchise thereby conferred within a period of five years from the time of the passage of the act.

In 1877 the Brooklyn and Rockaway Beach Railroad Company entered into a contract with the New York and Manhattan Beach Railroad Company, which

recited the act authorizing the Brooklyn and Rockaway Beach Company to extend its road to Hunter's Point and that the New York and Manhattan Beach Company desired to obtain the right to use and control a specified portion of such extension. The contract empowered the New York and Manhattan Beach Company to take, in the name of the Brooklyn and Rockaway Beach Company, the necessary steps to secure the right of way for that part of the proposed extension, and to build and equip such extension at its own expense.

The contract further provided that the Brooklyn and Rockaway Beach Company would lease the portion of the extension so constructed to the New York and Manhattan Beach Company for the term of the latter's corporate existence and any extension thereof, for the annual rent of one dollar.

The contract was based upon a covenant on the part of the New York and Manhattan Beach Company to "transport passengers and freight" "over its road between East New York and Greenpoint," which places were the terminals of its road. The contract provided that, in the event of a failure to perform all of the covenants, "this lease and the term hereby granted shall cease and determine and it shall thereupon be lawful for the said party of the first part to re-enter upon said railroad and property and the same to have again, repossess and enjoy."

In 1883, the New York and Manhattan Beach Company changed its terminal from Greenpoint to Long Island City, and on March 1, 1901, the Brooklyn and Rockaway Beach Company brought an action against it to secure an adjudication that a forfeiture had resulted.

*Held,* that a judgment adjudging the forfeiture should be reversed;

That, assuming that at the time of the execution of the contract the Brooklyn and Rockaway Beach Company still possessed any of the rights acquired by it under the act of 1871, it abandoned such rights by making the contract, as such contract was inconsistent with the obligation imposed upon it by the act of 1871;

That the contract, which was made when chapter 218 of the Laws of 1839 furnished the sole authority for a lease of one railroad company to another, was void under that clause of the statute which provided, "nothing in this act contained shall authorize the road of any railroad corporation to be used by any other railroad corporation, in a manner inconsistent with the provisions of the charter of the corporation whose railroad is to be used under such contract;"

That, consequently, the plaintiff could not maintain the action, especially as there was no evidence that it made any objection to the change of the terminal of the New York and Manhattan Beach Railroad Company until the commencement of the action or that it had suffered any damage by reason of such change.

APPEAL by the defendants, The Long Island Railroad Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on

the 11th day of July, 1901, upon the decision of the court rendered after a trial at the Kings County Special Term.

*William J. Kelly*, for the appellants.

*Augustus Van Wyck* and *Charles W. Church, Jr.*, for the respondent.

WOODWARD, J.:

The plaintiff corporation was organized under the General Railroad Law of 1850 (chap. 140), about 1864, for the purpose of constructing a single track railroad, about three miles in length, from East New York southerly to Canarsie on Jamaica bay. At Canarsie this railroad connected with a small steamboat which conveyed passengers to Rockaway Beach. Section 47 of the General Railroad Law was amended in 1867 (Chap. 775), so that it was provided that "If any corporation formed under" this act "shall not, within five years after its articles of association are filed and recorded in the office of the Secretary of State, begin the construction of its road and expend thereon ten per cent on the amount of its capital, or shall not finish its road and put it in operation in ten years from the time of filing its articles of association, as aforesaid, its corporate existence and powers shall cease." This act applied to plaintiff as will be seen by the provision that this extension of time shall apply to all corporations that did not begin the construction of their roads within five years after the filing and recording of their articles of association. With its road completed between the original terminal points the plaintiff, we may assume, sought and procured the passage of a special act (Laws of 1871, chap. 759) by which it was provided: "The Brooklyn and Rockaway Beach Railroad Company is hereby authorized and empowered to extend its railroad to Hunter's Point, in the county of Queens, by the most direct and feasible route, and use thereon a rail of the same weight as that now in use by said company, and also operate and maintain its present sidings and branches, and construct, operate and maintain such other sidings, turnouts and branches in connection with its present track, or with such extension, as the board of directors of said company may from time to time deem necessary for its business, using thereon a similar rail. All the provisions of

the act under which said company is organized, and the several acts amending the same, shall apply to said extension and to the construction, operation and maintenance of said sidings, turnouts and branch roads, and to acquiring title to any real estate required by said company in making the same."

It may be assumed that the language contained in the above-cited act was the language chosen by the plaintiff to define the rights and franchises which it sought by the act. As the act conveyed to it franchises and special privileges, its language must be construed most favorably to the People, and all reasonable doubts in construction must be resolved against the plaintiff. Words and phrases which are ambiguous, or admit of different meanings, are to receive, in such cases, that construction which is most favorable to the People. (*People* v. *B. R. R. Co.*, 126 N. Y. 29, 36, 37, and authorities there cited; *Trustees of East Hampton* v. *Vail*, 151 id. 463, 472.) Under this rule, we believe that the plaintiff had a franchise for the construction of a new road from the terminus of its then existing line to Hunter's Point (afterward Long Island City) which it was bound to exercise within a period of five years from the time of the passage of the act granting the franchise. The plaintiff having accepted the law of 1871 was bound to act under it. It could not accept the franchises given to it and then leave them in abeyance. They are supposed to have been given, not exclusively for the benefit of the plaintiff, but also in the interests of the public. It cannot be supposed that the Legislature meant to give them without imposing obligations upon the plaintiff to construct its road, nor can it be supposed that the Legislature meant to confer these franchises upon the plaintiff, leaving it optional with it whether it would build its road in one or fifty years. Such legislation would be against public policy, and such a legislative intent cannot be presumed. It must be supposed that the plaintiff applied for the franchises and that the Legislature granted them intending that they should be used, at least to some extent, and so far as practicable, in the near future. (*People* v. *B. R. R. Co.*, *supra*, 39.) Indeed, the statute expressly provided that the new grant should be subject to all of the conditions of the act under which the plaintiff was organized, and the amendments thereof, which provided that the construction of the road should be commenced and that ten per cent of the capital should be

expended within five years from the recording of the certificate of incorporation under the penalty of the absolute ending of the corporate existence.   Under a state of facts very similar, though by no means so clear from difficulties, the Court of Appeals in the case of *People* v. *B. R. R. Co.* (*supra*) declared a franchise forfeited, and the plaintiff having sought the equitable intervention of this court to sustain a forfeiture adjudged by the learned court at Special Term, it is proper to take into consideration the position of the plaintiff at the time of entering into the contract under which the forfeiture is claimed.

Chapter 218 of the Laws of 1839 was concededly in force at the time of entering into the contract which we are presently to consider, and section 1 of this act provided : " It shall be lawful hereafter for any railroad corporation to contract with any other railroad corporation for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed in such contract.   But nothing in this act contained shall authorize the road of any railroad corporation to be used by any other railroad corporation in a manner inconsistent with the provisions of the charter of the corporation whose railroad is to be used under such contract." That is, no railroad corporation was authorized to lease the road of another corporation and to use it in such a manner as to prevent the discharge of the duties and obligations of the leased road to the public.   It will be remembered that under the provisions of chapter 759 of the Laws of 1871 the plaintiff was authorized to " extend its railroad to Hunter's Point" (afterward Long Island City).   In January, 1877, six years after the enactment of the statute under which the plaintiff assumed to act, the contract or agreement under which it is claimed the defendants have forfeited their rights in certain properties important to their usefulness, was executed and delivered.   This contract was made between the New York and Manhattan Beach Railroad Company, as party of the second part, P. H. Reid, lessee of the latter road, party of the third part, and the plaintiff.   The New York and Manhattan Beach Company was organized in 1876 to build a railroad from the East river at Greenpoint by the way of East New York to Coney Island and had filed a map of its route.   The route shown on this map followed generally the lines of the plaintiff's proposed extension from Atlantic avenue

to near Jefferson street, where it diverged and ran to Greenpoint, while plaintiff's proposed route went to Hunter's Point (now Long Island City), the two lines reaching the East river less than one mile apart. The New York and Manhattan Beach railroad was narrow gauge, three feet between the tracks, but this has no bearing upon the question, except as it presents equitable considerations which may properly be considered in determining the duty of this court in the premises.

The agreement entered into on the 29th day of January, 1877, recites the special act authorizing the plaintiff to extend its road to Hunter's Point, and that the New York and Manhattan Beach Company " desires to obtain the right to use and control " so much of the railroad authorized by that act as it should construct under the agreement, and it provides for the consent of the plaintiff to the construction by the New York and Manhattan Beach Railroad Company of that part of such extension lying between the East New York terminus of plaintiff's road and Metropolitan avenue in the city of Brooklyn. This, it will be observed, is not a contract for the use of a road constructed by the plaintiff between its terminus in East New York and Hunter's Point, which was the franchise granted by the State, and which it was bound to exercise in the discharge of its duty to the public, but was in effect a waiver of its right, if it had any, to that portion of its proposed route which was practically identical with that of the New York and Manhattan Beach Railroad Company. When the plaintiff had, under the statute, located its line of road between its terminal points, pursuant to the requirements of its charter, it was concluded by that location and no change of its route could thereafter be made, in the absence of legislative authority (*Erie Railroad Co. v. Steward*, 170 N. Y. 172, 179), and it requires no citation of authority for the proposition that a corporate franchise to operate a line of railroad between two given points is not satisfied by the construction and operation of a portion of such line and a complete abandonment of the remainder. (*Matter of Metropolitan Transit Company*, 111 N. Y. 588, 603.). A charter must be accepted or rejected *in toto*. If accepted it must be taken as offered by the Legislature. The one under which the present claim is made contains no permission and confers no power to accept in part

and reject in part. (*People* v. *Albany & Vermont R. R. Co.*, 24 N. Y. 261.)  The situation at the execution of the agreement and the consideration for the same, if there was any, was that the plaintiff agreed for and in consideration of the covenants of the New York and Manhattan Beach Railroad Company to abandon its pretended or assumed rights under the act of 1871, and the party of the second part agreed that it would take all such measures in the name of the party of the first part as should be necessary to secure the right of way for the proposed extension, which rights of way were to be taken in the name of the party of the first part, and it was also agreed that " immediately after the said right of way shall be procured as aforesaid, the said party of the second part shall and will at its own costs and expenses lay down and construct a railroad over and along the route aforesaid in all respects in conformity with the aforesaid Act of the Legislature," etc.   It also provided that the party of the second part would equip the road with cars, provide depots, turnouts, sidings, switches, etc., and that upon the completion and equipment by the said party of the second part of " that portion of said extension hereinbefore specified as hereinbefore provided the said party of the first part hereby covenants and agrees to let and rent and it does hereby from and after such completion and equipment lease and rent unto the said party of the second part that portion of said extension so constructed as aforesaid, including all the roadbed and line of the party of the first part situate between the terminus of said extension at or near Metropolitan avenue in the city of Brooklyn and the terminus of said extension at or near the intersection of East New York and Atlantic avenues in the village of East New York in the County of Kings upon or across which said extension or any part thereof shall be constructed and including any and all depots, car houses or other erections placed thereon by the party of the second part as hereinbefore provided and all the rights, title and interests which the party of the first part has in or to the same, together with all the appurtenances thereunto belonging for and during the remainder of the period of the corporate existence of the party of the first part and any extension thereof hereafter obtained, from and after the time of such completion with full power to collect and receive all tolls, profits and incomes which may be derived from the

operation of the railroad of the party of the second part over such extension or any part thereof, and with full power to enjoy and use so much of the franchises and privileges of the party of the first part as may be necessary or are usually exercised in and about the operation of a railroad, the said party of the second part yielding and paying therefor to the said party of the first part the annual rent of one dollar to be paid on demand on the first day of July in each year. Provided, however, and this lease and the term hereby granted, is subject to the following conditions and restriction," etc.

Here we have the plaintiff, which asks the aid of a court of equity to decree a forfeiture against these defendants, deliberately entering into a contract which makes it impossible for it either to construct or operate the line of railroad which it was permitted to construct between its terminus in East New York and Hunter's Point. It assumes to accept the charter as to a short portion of this route and to abandon absolutely all of the remainder of the same, and to enter into a contract with the New York and Manhattan Beach Railroad Company by which it is precluded from constructing or operating a line of railroad between the terminals named in the statute, and its contract is based upon a covenant on the part of the New York and Manhattan Beach Railroad Company to " transport passengers and freight," not between its terminal in East New York and Hunter's Point, but " over its road between the City of New York and Greenpoint." It should be remembered that the only power then existing for the lease of one railroad to another was found in chapter 218 of the Laws of 1839, and this expressly provided that " nothing in this act contained shall authorize the road of any railroad corporation to be used by any other railroad corporation, in a manner inconsistent with the provisions of the charter of the corporation whose railroad is to be used under such contract." Clearly this contract was inconsistent with the obligation imposed under the statute of 1871, assuming that the plaintiff had rights under it at the time of making this contract, for the franchises granted by that act are supposed to have been given, not exclusively for the benefit of the plaintiff, but also in the interests of the public. It cannot be supposed that the Legislature meant to give them without imposing obligations on the plaintiff to build its road (*People* v. *B. R. R. Co., supra*), and it has been

held that where a railroad has been constructed it is not within the legal right of the corporation to abandon any part of its road without the consent of the Legislature. (*People* v. *Albany & Vermont R. R. Co.*, 24 N. Y. 261, 263.) If the charter is accepted, it must be taken as offered by the Legislature (*Matter of Metropolitan Transit Company*, 111 N. Y. 588, 603), and the duty owed to the public cannot be discharged by a contract to construct and operate a portion of this line, with no arrangement whatever for reaching the terminal fixed in the act giving the franchises.

Taking this view of the contract, that it was prohibited by the statute under which the lease was intended to be made, we cannot hold that because the New York and Manhattan Beach Railroad Company many years ago changed its route, so that it had a terminal at Hunter's Point or Long Island City, instead of at Greenpoint, it has forfeited its rights in that portion of the route involved in the contract under consideration. The learned court at Special Term based its decision upon the fact that the contract called for the transportation of freight and passengers between the terminal of plaintiff's original road and Greenpoint, and provided in the event of a failure to perform all of the covenants that "this lease and the term hereby granted shall cease and determine and it shall thereupon be lawful for the said party of the first part to re-enter upon said railroad and property and the same to have again, repossess and enjoy." In our view of the case the plaintiff had no rights under the act of 1871; or, if it did have any rights at the time of making the contract, it abandoned all rights by entering into a contract which prevented it from discharging its duties and obligations under the act of 1871, and that such contract was void and it has done nothing since that time to regain any rights under the act of 1871, or to develop equities which this court can recognize or enforce. The change in terminal from Greenpoint to Long Island City was made in 1883; from that time up to the date of the commencement of this action, we find no evidence of the plaintiff making any specific objections to such change, and the learned court at Special Term refused to find that the plaintiff had suffered any damages by reason of the change, so that all there is of the plaintiff's case is a naked legal right of forfeiture provided the contract was valid in its inception, and upon this point, for the reasons

already stated, we are of opinion that the agreement ran counter to public policy as evidenced by the law, and that it could not afford the basis of an action of this character.

The judgment appealed from should be reversed, with costs.

All concurred.

Judgment reversed and new trial granted, costs to abide the final award of costs.