THE TRUSTEES OF THE FREEHOLDERS AND COMMONALTY OF THE TOWN OF EAST HAMPTON, Appellant, *v.* JEREMIAH H. VAIL et al., Respondents.

1. CONSTRUCTION OF WRITTEN INSTRUMENT.  While it is a general rule that the construction of a written instrument is a question of law for the court, yet, where its interpretation depends upon the sense in which the words were used, or depends upon facts *aliunde* in connection with the written language to ascertain the intent of the parties, the question becomes a mixed question of law and fact.

2. TOWN OF EAST HAMPTON — COLONIAL PATENTS — "BAY" AS A BOUNDARY.  It cannot properly be held, as matter of law, in view of the surrounding facts, that the word "bay," in the clauses of the Nicholls and Dongan patents to the town of East Hampton which describe the territory conveyed as bounded on the north "by the Bay," taken in connection with an Indian deed, which describes contiguous territory as bounded on the north by the "bay or sound," was intended to mean Block Island sound and not Fort Pond bay, so as to lead to the legal conclusion that land covered by water, known as Fort Pond bay, was included in the premises conveyed.

3. HAVENS AND HARBORS.  The provisions of the Nicholls and Dongan patents, conveying to the town of East Hampton all havens and harbors within the boundaries of the grant, cannot give the town any title to land under a harbor not included within the boundaries of the grant.

4. PRACTICAL INTERPRETATION OF PATENTS.  The fact that the town of East Hampton never claimed any title or exercised any acts of owner-

ship over the land under Fort Pond bay until about the time of commencing the action in suit to establish an exclusive right therein, is to be regarded as a practical interpretation of the patents by the parties interested therein, and is important in determining their rights.

*Trustees, etc.,* v. *Vail,* 71 Hun, 94, affirmed.

(Argued December 18, 1896; decided January 19, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the second judicial department, entered January 9, 1894, upon an order overruling plaintiff's exceptions ordered to be heard in the first instance at General Term and directing judgment for defendants upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Benjamin F. Tracy* for appellant. The grant to the town of East Hampton, made by Governor Nicholls on the 13th of March, 1666, and confirmed by Governor Dongan on the 9th of December, 1686, operated to convey to the grantee the lands under tide water in Fort Pond bay. (*Langdon* v. *Mayor, etc.,* 93 N. Y. 129; *Martin* v. *Waddell,* 16 Pet. 367; *Town of Huntington* v. *Lowndes,* 40 Fed. Rep. 625; *Lowndes* v. *Town of Huntington,* 153 U. S. 1; *Rogers* v. *Jones,* 1 Wend. 237; *Trustees of Brookhaven* v. *Strong,* 60 N. Y. 56; *Robins* v. *Ackerly,* 91 N. Y. 98.) Fort Pond bay is a "haven" or "harbor" within the meaning of the language contained in the patent of Governor Nicholls, made in 1666 and confirmed by Governor Dongan in 1686. (*Mayor, etc.,* v. *Hart,* 95 N. Y. 443; *Atty.-Genl.* v. *Parker,* 3 Atk. 576; *Lowndes* v. *Town of Huntington,* 153 U. S. 1.) The two patents to the town of East Hampton conveyed an exclusive right to fishery in the waters of the town. (*Rogers* v. *Jones,* 1 Wend. 237; *Trustees of Brookhaven* v. *Strong,* 60 N. Y. 56; *Gould* v. *James,* 6 Cow. 369; Const. of 1777, § 36; Const. of 1821, art. 7, § 14; Const. of 1846, art. 1, § 18; Const. of 1894, art. 1, § 17.) The owners of the uplands of Montauk never acquired any title to or estate in Fort Pond bay. (*People* v. *B. R. R. Co.,* 126 N. Y. 29; *Johnson* v. *McIntosh,* 8 Wheat. 543; *Martin* v. *Waddell,*

16 Pet. 367; *Town of Southampton* v. *M. B. O. Co.*, 116 N. Y. 1; Angell on Tidewaters [2d ed.], 51, 52; *Trustees of East Hampton* v. *Kirk*, 68 N. Y. 459; 84 N. Y. 215; *Atkinson* v. *Bowman*, 42 Hun, 404; *Gould* v. *H. R. R. R. Co.*, 6 N. Y. 522; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79; *Archer* v. *Bennett*, 1 Lev. 137; *Leonard* v. *White*, 7 Mass. 6; *Jackson* v. *Hathaway*, 15 Johns. 447; *Lawrence* v. *Delano*, 3 Sandf. 337.)

*Thomas Young* and *T. M. Griffing* for respondents. Fort Pond bay does not belong to the class of waters which have heretofore been construed by the courts as being included within the Long Island patents. (*Town of Southampton* v. *M. B. O. Co.*, 116 N. Y. 14; *Trustees of Brookhaven* v. *Strong*, 60 N. Y. 59; *Robins* v. *Ackerly*, 91 N. Y. 98; *Hand* v. *Newton*, 92 N. Y. 88; *Town of North Hempstead* v. *Thompson*, 115 N. Y. 635; *Lowndes* v. *Town of Huntington*, 153 U. S. 1; *I. C. R. Co.* v. *State of Illinois*, 146 U. S. 387.) It constituted a good defense in ejectment to show title in a third person, and we had a right to prove such defense under our general denial. (*Raynor* v. *Timerson*, 46 Barb. 518.)

MARTIN, J. This action was in the nature of ejectment to establish an exclusive right in the town of East Hampton to a tract of land covered with water and known as Fort Pond bay.

It is alleged in the complaint that the plaintiff is a body corporate, incorporated under a colonial charter or patent granted December 9th, 1686, by Thomas Dongan, then governor of the province of New York, under James the Second, King of England, and duly ratified and confirmed by laws of the colony of New York, and by the Constitution of the state; that by virtue of such patent and of another granted to the town of East Hampton, March 13th, 1666, by Richard Nicholls, governor of the colony of New York, the plaintiff is the owner of the land in question, and that the defendants are unlawfully withholding the possession thereof.

The defendants, by their answer, admit most of the allega-

tions of the complaint, but deny the plaintiff's title and right of possession.

To establish its title, the plaintiff relied upon two patents. The first was issued March 7th, 1666, by Governor Nicholls, and conveyed to the plaintiff certain premises which are described as, " beginning from the East Limitts of the Bounds of Soutpton (as they are now laid out, and Stak't, according to Agreement and consent) so to stretch East, to a certaine Pond, commonly callee the Fort Pond, which lyes within the old Bounds of the Lands belonging to the Muntauke Indyans, and from thence to go on still East, to the utmost extent of the Island ; On the North, they are Bounded by the Bay, and on the South by the Sea, or Maine Ocean, All which said Tract of Land, within the Bounds and Limitts before mentioned, And all, or any Plantation thereupon, from hence forth, are to belong and appertaine, to the said Towne, and bee within the Jurisdiction thereof ; Together with all Havens, Harbors, Creekes, * * * waters, Lakes, Rivers, ffishing, Hawking, Hunting and ffowling, And all other Proffits, Commodityes, Emoluments and hereditaments, to the said Tract of Land and pr'misses within the Limitts and Bounds afore mentioned described, belonging, or in any wise appertaining : "

The second was issued on December 9th, 1686, by Governor Dongan, which, after reciting the prior patent issued by Governor Nicholls, that there was a part of a certain tract of land within the bounds and limits, commonly called Montauk, which remained unpurchased from the Indians, and that some of the freeholders of the town of East Hampton, at the request of the rest, had made application for liberty of the freeholders of the town to purchase that tract of the Indians, and for a confirmation of the premises by patent under the seal of the province, ratified and confirmed to Thomas James and others, freeholders and inhabitants of East Hampton, " all the aforecited tracts and neckes of lands within the limits and bounds aforesaid with all and singular the * * * Creekes, harbours, highwayes and easements, fishing, hawking, hunting and fowling."

On the trial the plaintiff introduced these two patents in evidence. It also introduced two Indian deeds; the first dated August 6th, 1660, which purported to transfer to the grantees the neck of land called Montauk; the other was dated July 25th, 1687, and in form transferred to the freeholders of East Hampton, " all our tract of Land att Meantauk bounded by part of the fort pond & Fort Pond bay west; ye English land South by a line run from ye fort pond to ye great pond and soe from ye south End or ye great pond over to ye south sea and soe to the utmost extent of ye Island from sea to sea bounded by ye main Ocean on the South and by ye bay or sound on the north side."

May 6th, 1691, an act was passed by the colonial legislature of the province of New York, by which all letters patent executed under the seal of the province to the cities, towns or manors, and also to the several freeholders within the province, were declared to be good as against the crown.

On the trial, at the close of the evidence, the plaintiff and defendants asked the court to direct a verdict in its or their favor, whereupon the court directed a verdict for the defendants. To this direction the plaintiff excepted, and the exceptions were ordered to be heard in the first instance at the General Term. They were subsequently argued and overruled, and judgment was directed for the defendants upon the verdict with costs.

Practically the only question before this court is whether the evidence so clearly and conclusively established the plaintiff's title to the land under the waters of Fort Pond bay that, as a matter of law, it was entitled to the direction of a verdict in its favor. If it failed to establish its title, then it is manifest that the court properly directed a verdict for the defendants. It is equally true that if the evidence was such as to present a question of fact as to the plaintiff's title which was for the jury, then, by asking for the direction of a verdict, the plaintiff waived its right to have it thus submitted, consented that it should be determined by the court, and its determination thereof is final.

In the language of ANDREWS, J., in *Thompson* v. *Simpson* (128 N. Y. 270, 283) : " The effect of a request by each party for a direction of a verdict in his favor clothed the court with the functions of the jury, and it is well settled that in such case where the party whose request is denied does not thereupon request to go to the jury on the facts, a verdict directed for the other party stands as would the finding of a jury, for the same party, in the absence of any direction, and the review in this court is governed by the same rules as apply in cases of ordinary verdicts rendered without any direction. All the controverted facts and all inferable facts in support of the judgment will be deemed conclusively established in favor of the party for whom the verdict was directed."

The plaintiff contends that the court should have held, as a matter of law, that Fort Pond bay was south of the northern boundary and included within the lands conveyed by the patents under which it claims title. The premises were described in those patents as bounded on the north " by the Bay." No particular bay was mentioned or designated, although what is now known as Gardner's, Napeague and Fort Pond bays lie immediately north of the peninsula upon which the town of East Hampton is located. The plaintiff insists that the bay referred to in its patents as the northern boundary was not Fort Pond, or any other bay, but Block Island sound. As evidence to sustain that proposition, it introduced the Indian deed made in 1687, which conveyed that portion of Montauk, lying east of Fort Pond bay, and described it as being bounded on the north by the " bay or sound." It is argued that the language employed in that description shows that the words " bay " or " sound " were used interchangeably at about the time those patents were issued, to designate what is now known as Block Island sound, and, hence, that it was the sound that was referred to and intended as the northern boundary of the plaintiff's purchase.

While it may be that at that time Block Island sound was sometimes called a sound and at others a bay, and that the parties interested intended to bound the premises conveyed on

the north by that body of water, yet the deed is far from con-
clusive evidence of that fact. The infirmity of that con-
clusion lies in the fact that, if that was the sheet of water
referred to, it was not a bay, but was a sound. Again, it is not
at all certain that the terms "bay" and "sound" were used
interchangeably as to any single body of water. When we
remember that both adjoin that portion of the peninsula on
the north, it would seem quite as probable that the words
"bay or sound" were intended to refer to Fort Pond bay and
Block Island sound, as that both were used as descriptive of
the sound.

Moreover, it is not unusual in conveyances of land to find
a description bounding it on one side by the lands of one
adjoining owner or the lands of another, or by one or another
of two named objects or monuments, when it is in fact
bounded by both, especially where the deed was drawn by a
layman or other person unaccustomed to conveyancing or
unused to the correct and precise meaning of words or techni-
cal terms usually employed. Indeed, we often find in deeds,
other conveyances and elsewhere the word "or" used improp-
erly instead of the word "and."

It is further urged that it is absurd to suppose that the
word "bay" in the patents referred to Fort Pond bay, which
is but about two miles in width, while the northern boundary
of the land embraced therein extended from Southampton to
Montauk Point with a coast line of about thirty miles.
Although it must be admitted that this suggestion is not with-
out force, yet we regard it as in nowise conclusive. At that
time but a small portion of the peninsula was settled. The
chief settlements were evidently near the present site of the
village of East Hampton, south of Gardner's bay, which extends
from the westerly bounds of the premises purchased to
Napeague Beach. The eastern portion was a mere peninsula
or bar of sand, valueless, and practically unknown. Under
such circumstances it is not wholly improbable that the words
"the bay" were intended to refer to Gardner's bay, that
being the northern boundary of the land conveyed of which

the parties then had any definite knowledge. Indeed, it is, perhaps, quite as probable that the bay intended was either Gardner's or Fort Pond bay, as that Block Island sound was the subject referred to.

Again, it is said that it is not to be presumed that the grantees in the Indian deed of 1687 intended to obtain a different northern boundary from that given in the Nicholls and Dongan patents. That may be, but inasmuch as a different description was in fact given, it can hardly be a legal presumption that no change was intended. The history of the negotiations and dealings between the early settlers and the Indians is not of a character to create any very strong presumption that the grantees intended to describe only the lands to which they had previously acquired title.

A study of the evidence renders it obvious that it cannot be properly held, as a matter of law, that the land in dispute is included in the premises conveyed to the plaintiff by the Nicholls and Dongan patents. Most favorably considered, the question whether the northern boundary of the plaintiff's premises is Fort Pond, Gardner's, some other bay, or is Block Island sound, was a question of fact which has been decided adversely to the plaintiff, and that decision is controlling upon this court.

While it is a general rule that the construction of a written instrument is a question of law for the court, yet, where its interpretation depends upon the sense in which the words were used, or depends upon facts *aliunde* in connection with the written language to ascertain the intent of the parties, the question becomes a mixed question of law and fact. ( *White* v. *Hoyt*, 73 N. Y. 505; *First Nat. Bk.* v. *Dana*, 79 N. Y. 108; *Kenyon* v. *K. T. & M. M. A. Ass'n*, 122 N. Y. 247, 254; *Stokes* v. *Mackay*, 140 N. Y. 649.)

The plaintiff also urges another ground for reversal. It claims that under the provisions of the Nicholls and Dongan patents, it acquired title to all havens and harbors, and that Fort Pond bay was a harbor, and, consequently, passed under those conveyances. In discussing this question, it must be assumed

that the northern boundary of the land conveyed is south of Fort Pond bay. That being so, how can it be said that the plaintiff acquired title to the land under the water of that bay, even if it is a harbor or haven, as the description restricts the conveyance to such as are within the limits or bounds mentioned? Moreover, nearly all the oral evidence introduced was addressed to the question whether Fort Pond bay was a harbor or haven; it was conflicting and plainly presented a question of fact. · Upon that question the court found for the defendants, and its determination cannot be reviewed by this court.

The fact that there was no proof that the plaintiff ever claimed any title or exercised any acts of ownership over the land under Fort Pond bay until about the time of this action must be regarded as a practical interpretation of the patents by the parties interested in them, and is important in determining their rights. (*Town of Southampton* v. *Mecox Bay Oyster Co.*, 116 N. Y. 1, 11.) The evidence, as well as the absence of any evidence, that the plaintiff ever made any claim of title to the land under the bay is significant, and indicates that the idea of its ownership of the property in dispute is of recent origin.

The deed from the Indians to the freeholders of East Hampton given in 1660 has no important bearing upon the question involved in this case. The Indians had no title which they could grant that would be recognized by the courts of this country, and, consequently, their deed conferred no title upon the plaintiff. (*Town of Southampton* v. *Mecox Bay Oyster Co.*, 116 N. Y. 1.) Furthermore, it related entirely to premises other than those involved in this controversy.

We have carefully examined the authorities cited by the learned counsel for the appellant, and find no occasion to disagree with any of the principles actually established by them. The doctrine of those cases has no application to the question involved here. Nor do we deem it necessary to especially examine or discuss any of them, except *Lowndes* v. *Huntington* (153 U. S. 1). As the appellant claims that that case is conclusive upon the question involved in this, it may be

proper to observe that the sound was the northern boundary of the premises then in controversy, so that Huntington bay was unquestionably included within the express provisions of the grant. It is true that the question whether it was a part of the sound was also involved, and it was held that it was not. The court in that case decided that the title to the land under the bay passed to the grantee, not because the bay was a harbor or haven, but because it was within the limits of the description contained in that grant. Thus we see that the question in that case is essentially different from the question here, and has no practical bearing upon it. As is conceded by the appellant, the only question at issue in this case is whether the plaintiff has established as a fact that the northern boundary of the premises conveyed by the Nicholls and Dongan patents was north of Fort Pond bay.

Moreover, the patents in this case were intended to convey to the plaintiff certain rights which belonged to the public. Under such circumstances, the rule seems to be that their language should be construed most favorably to the people, and all reasonable doubts in construction solved against the person claiming under the grant, and words or phrases which are ambiguous or admit of different meanings are to receive a construction most favorable to the public. (*People* v. *B. R. R. Co.*, 126 N. Y. 29, 36, and cases cited in opinion.)

We are of the opinion that the plaintiff's evidence was insufficient to require the trial court to hold, as a matter of law, that it had title to the premises in question; that upon all the proof and facts to be inferred therefrom the court was justified in finding that it had not, and in directing a verdict for the defendants.

Several other interesting questions were discussed on the argument, but as none of them would, in any event, affect the result we have already reached, we deem it unnecessary to examine or determine them at this time.

The judgment and order should be affirmed, with costs.

All concur, except GRAY, J., not voting.

Judgment and order affirmed.