(73 Misc. Rep. 283.)

### JACOB v. TOWN OF OYSTER BAY.

(Supreme Court, Special Term, Kings County. August, 1911.)

1. NAVIGABLE WATERS (§ 37*)—DESCRIPTION OF BOUNDARIES—SEASHORE.
    A conveyance of meadow land bordering the seashore carries title to
    the high-water mark, and gives access to the water, though a beach
    formed by the sand thrown up by the waves intervenes between the
    meadow and the sea; and a subsequent conveyance to the town in which
    the land lies which excludes "the particular propriety of any person or
    persons who have right by patent or other lawful claim to any" land
    within the limits described will not be construed as including the beach
    referred to.

    [Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 37.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
    132 N.Y.S.—42

2. NAVIGABLE WATERS (§ 37*)—DESCRIPTION OF BOUNDARIES—SEASHORE.

     Though the boundaries of tracts of land bordering the seashore are given as ranging from a stake on the edge of the upland to the beach, and from the edge of the upland to a bush on the beach, they will be construed as running to high-water mark; the objects mentioned not being the termini of the boundaries, but only determining the direction of the lines.

     [Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 37.*]

3. NAVIGABLE WATERS (§ 37*)—EVIDENCE—USE OF LAND.

     Evidence of the use of a beach by inhabitants of a town to gather gravel, seaweed, and driftwood, without evidence of any claim of title in the town or any license from the town, or that the town knew of it, does not authorize an inference that the town claimed ownership of the beach, where the persons exercising the privilege did not discriminate between the beach in question and beaches concededly owned by private persons.

     [Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 37.*]

4. ADVERSE POSSESSION (§ 114*)—EVIDENCE—SUFFICIENCY.

     Where there is no proof of the hostility of the possession of plaintiff in ejectment, nor that his possession was sufficient to give it notoriety, nor that it was exclusive, it is insufficient to establish title by adverse possession.

     [Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 114.*]

Ejectment by Lawrence Jacob, as executor, against the Town of Oyster Bay. Judgment for plaintiff.

Wilmot T. Cox (Rowland Miles, of counsel), for plaintiff.

Payne & Scudder (William J. Youngs and William Paul Allen, of counsel), for defendant.

JAYCOX, J. The premises in controversy are a sandy, gravelly strip of beach connecting a parcel of land known as "East Island" with the mainland of Long Island in the town of Oyster Bay, Nassau county. As the foregoing sentence would indicate, East Island is not an actual island, but is a parcel of upland connected with the mainland by the strip of beach in question. It is, however, and has been for many years, popularly known as an island. Originally the only means of access to it was by way of this sandy beach. Later, however, a causeway was built from the mainland to another island near it known as "West Island," and still later the two islands were connected by another causeway. During the early times between these islands and the mainland was a low-lying tract of meadow and that intersected by creeks. Later, by the building of the causeway above mentioned, these meadows have been converted into a pond or ponds. In the causeway are constructed tidal gates which open with the incoming tide, permitting the water to flow in, and close when the tide starts to flow out, thus imprisoning these waters and forming ponds. The strip of beach in question is between the easterly of these ponds and Long Island Sound. It is approximately half a mile in length, and from 170 to 200 feet in width, and rises to 6 or 7 feet above high-water mark. It is washed by the tides on its north and south shores. Originally its south boundary was the meadows which are now covered by the waters of the pond.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff claims to make title to the premises in three ways: First, that they are appurtenant to and passed as part of East Island; second, that they are included in the boundaries of and passed as a part of the meadows; third, by adverse possession.

The defendant, the town of Oyster Bay, claims to be the owner in fee under a certain charter or patent made the 29th day of September, 1677, by Edmund Andros, then Governor General of the Province of New York. The plaintiff's title begins in 1667 in seven deeds from the Indians to seven individuals who are the predecessors in title of the plaintiff. One of these individuals, Robert Williams, by the same deed from the Indians, obtained title to East Island. In said deed the island and the share of the meadow land conveyed to Williams is described as follows:

"A certain Island lying at the North Sea, and a small piece of Meadow, adjoyning to the Island, being the Eastermost of the two, comonly called Matinnicock Islands; as also foure Acres of upland, more or lesse, lying over against the said Islands, wth free comonage of Grasing and Timber, wth all Right and Title in ye Seventh part of our undisposed meadows, fresh and salt, with Creeke Thatch, wth ye benefitt of all Mineralls according to Law, wth the benefitts of the Creekes and Coves, wth free Hunting, ffishing and ffowling; The said Bounds beginning from Rackon Swamp, or the foure Rocks, lying in John Underhill's Meadow, from thence west to Musketo Cove; with all meadows, Creeke Thatch, broken lands, lying and being within the said Bounds and Coves and my Proporcon of Meadow and Creeke Thatch, being the seventh part to bee aloted me in the Cove, adjoyning to the Island, where I shall choose."

The other shares of the meadow are described in exactly the same manner as the share conveyed to Williams, and it is that portion of these meadows lying south of East Island which has been flooded and forms the pond heretofore mentioned and known as "Dosoris Pond." The title to the land under the waters of this pond has been the subject of an action tried in this court, and subsequently appealed to the Court of Appeals. Dosoris Pond Co. v. Campbell, 25 App. Div. 180, 50 N. Y. Supp. 819; Id., 164 N. Y. 596, 58 N. E. 1087. In that action it was decided that plaintiff's predecessors in title had title to these lands under the waters of the pond under the same chain of title which plaintiff relies upon now to make title to the premises in question. It would, therefore, seem to follow as a necessary and logical conclusion that the questions involved in the first and second of plaintiff's contentions are questions of boundaries only. It is not plaintiff's contention that he makes title under the conveyances from the Indians, or that title can be so made; but he does contend that these conveyances and the record of them, under the laws then existing, are some evidence that the grantees had complied with all the legal requirements and had obtained the necessary consents from the sovereign power, and that the patent from the then Governor General to Williams made good title in him as to the whole of the island and as to his seventh of the meadows, and that, as to the other six-sevenths, the possession of one tenant in common was the possession of all, and that, therefore, the rights of the Indian proprietors had been legally extinguished and title to all the premises described in the conveyances in question vested in plaintiff's predecessors in title.

.This contention has met with approval in the action above cited (Dosoris Pond Co. v. Campbell) and the defendants apparently concede this. The grants to plaintiff's predecessors in title being prior in date to the patent to the town, if title passed by such prior grants, no title was left in the Crown to grant to the defendant; and, in fact, the patent expressly excluded "the particular propriety of any person or persons who have right by patent or other lawful claim to any part or parcel of land or tenements within the limits aforesaid." This patent to the town was sufficient to vest title in the town to all lands within its bounds which were not at that time "the particular propriety of any person or persons who had right by patent or other lawful claim" to such lands. Town of Southampton v. Mecox Bay Oyster Co., 116 N. Y. 1, 22 N. E. 387.

[1] The first question, then, to be determined, is as to whether or not the conveyances to Williams and others above mentioned included the premises. I am of the opinion that they did. The premises in question, as stated above, which the courts have found are conveyed and of which good title is made under the chain of title now offered by the plaintiff, were separated from the sound by this strip of sandy, gravelly beach. The evidence shows that under this beach, or sand and gravel, are still found the meadow lands, and that, at times of heavy storms, the sands are washed away, and this meadow land is disclosed. I think the situation here shown comes well within the principle enunciated in McRoberts v. Bergman, 132 N. Y. 73–83, 30 N. E. 261, 263:

"A grant of a salt meadow separated from the sea only by a beach formed by the sand thrown by the waves upon the meadow itself ought not, in the absence of evidence of the public reservation or of a hostile grant to another, to be construed, to use the words of the opinion in the case cited, 'to cut him (the grantee) off from access to the water over his own land.'"

There was nothing between this land in question and the sound but this beach; and, to again quote from McRoberts v. Bergman, supra:

"The word 'beach' denotes land washed by the sea, and in the absence of qualifying words, a boundary by the ocean beach extends to high-water mark. Trustees of East Hampton v. Kirk, 68 N. Y. 459; People ex rel. Burnham v. Jones, 112 N. Y. 605 [20 N. E. 577]."

Within the rule as laid down in those cases, the description here would seem to take the grantee to the sound. The defendant lays stress upon the fact that no mention is made in the grants to Williams and others of beach, and claims that this is particularly significant because at that time a careful distinction was made in patents and other instruments of a similar character between the different kinds of land conveyed, as land, meadow land, fresh and salt, thatch and creek thatch; but, if this is of any particular moment, it is well to notice that the patent under which the defendants claim contains no reference to beach. It may be that at the time the patent was made the parties concerned in the transaction may have known and conceded that all the beach along that portion of the premises, at least, had been conveyed by prior grants. If upland had been conveyed

by the same description, it would have included the beach in front of it. I can see no reason why the same rule of construction should not apply to meadow land and the beach be included with it. The beach around East Island concededly passed with the island without any specific designation. The beach in front of all the upland in the neighborhood apparently passed with the upland without any specific designation. There is, so far as I gathered from this case, no other beach along that shore to which the town lays any claim. It would be a curious anomaly if beach would pass by the grant of upland in front of which it lies and not pass by a grant of meadows in the same situation. That the beach at this point may be a little wider than the beach at other points along that shore can make no difference. The beach in front of upland varies in its extent by reason of the difference in the soil and the height of the land above sea level. Naturally in front of low-lying meadows it is wider than it is in front of high land. By reason of this situation the sand and gravel are more readily washed up onto the meadow by the action of the winds and tides, as the proofs indicate they were in this instance. Then, too, the width of the gravelly space would depend on its exposure to wind and tide. This spot had a particularly exposed position. It faced the northeast wind with nothing to break its force. The testimony indicates that this had the natural result and more sand and gravel were washed up there than elsewhere.

[2] In the course of the devolution of the title, the meadows in question were divided, and it is claimed by the defendant that the description in some of these allotments of the meadow indicate that the beach is excluded. I do not think that this is a correct interpretation of these descriptions. Some of the boundaries are given as ranging from a stake on the edge of the upland to the beach, and another ranges from the edge of the upland to a bush on the beach. I think within the principle stated in Trustees of East Hampton v. Kirk, 68 N. Y. 459, that a boundary of this character must be construed as running to high-water mark on the beach on the sound side. These objects are not designated as the termini of the lines, but are objects through which the lines run. I think that the situation is somewhat analogous to a boundary upon a stream of water or along a highway. In Gouverneur v. National Ice Co., 134 N. Y. 355, 31 N. E. 865, 18 L. R. A. 695, 30 Am. St. Rep. 669, it is held that a conveyance of land to a lake or pond adjoining, or to some monument on the land at the water, and thence along the pond to some other monument on the bank, carries title to the center of the pond. A number of cases of similar import are cited in that case, and from many of them quotations are made, among them the following:

"In Child v. Starr, 4 Hill, 375, the chancellor remarked that 'running to a monument standing on the bank, and from thence by the river or along the river, does not restrict the grant to the bank of the stream, for the monuments in such cases are referred to only as giving the direction of the lines to the river, and not as restricting the lines upon the river.'"

I think the same is true in this case—that the objects in question do not restrict the boundary to the particular point indicated upon the

beach, but that such lines pass through the points indicated to high-water mark upon the sound shore. In Fulton Light, Heat & Power Co. v. State, 200 N. Y. 400, 94 N. E. 199, the grant then under consideration described a tract of 200 acres on the east side of the river, below the falls, by a description which ran from a white ash sapling standing on the east shore of the Oswego river by courses to the east, to the north, and to the west, to the said river, and then upon and along the same to the place of beginning. The court said of such a grant:

"This grant should be construed as to its descriptive language, as would be any ordinary grant of property. Being presumed to have been made for a sufficient consideration, there is no reason for construing it with any extraordinary strictness as against the grantee,"

—and concluded that the state's conveyance by its letters patent granted to the patentee a tract of land bounded westerly by the center of the Oswego river. See, also, Smith v. Bartlett, 180 N. Y. 360, 73 N. E. 63.

The fact that at the time when the earliest conveyances were made of East Island this strip of beach was a necessity for access to it I think is worthy of some consideration. The grantee of the island would, of course, have a right of access along the shore (Barnes v. Midland R. R. Terminal Co., 193 N. Y. 378, 85 N. E. 1093, 127 Am. St. Rep. 962); but this means of communication, if confined to the space between high and low water mark, would be a very precarious and uncertain one and, during high spring tides and severe storms, the whole strip of beach itself would afford a path none too certain in its character.

Then it is of some importance to consider what object there would be in any reservation of this character. The Indians had conveyed the island. They had conveyed the meadows between the island and the mainland. What purpose could they possibly have in reserving this small strip of beach? I think that the evidence indicates that the town never made any claim to ownership of this beach until within very recent times, and this affords very good evidence of a practical interpretation of the patent itself. Broom, Leg. Max. (7th Eng. Ed.) 516; Trustees of East Hampton v. Vail, 151 N. Y. 471, 45 N. E. 1030; Baird v. Campbell, 67 App. Div. 104, 73 N. Y. Supp. 617; Town of Southold v. Parks, 41 Misc. Rep. 456, 84 N. Y. Supp. 1078.

[3] It is true there is some evidence of the use of this beach by inhabitants of the town for the purpose of gathering gravel, seaweed, and driftwood, but there is no evidence that it was done under any claim of title in the town, or by reason of any license from the town, or that the town in any way knew what these persons were doing; and this evidence is further qualified by the fact that the persons who exercised this privilege did not discriminate in any way between the beach which the town now lays claim to and other beaches which are concededly the subject of private ownership, but they gathered gravel, seaweed, and drift wherever they found it, from Peacock's Point to Matinnecock Point, thus going about half a mile or more each side of the premises in question.

While I am of the opinion that the town would, under its patent, acquire title to all lands not granted to private persons when the Indian title was extinguished, still I think it is a matter of some moment that the town did not, so far as the evidence shows, acquire any Indian titles in this locality, and did all it could for the purchasers of lands in this vicinity. It did purchase from the Indians in other parts of the town. This would go to show that the town authorities were of the opinion that at the time of the patent all the land in this section was the subject of private ownership.

[4] As to plaintiff's claim of title by adverse possession, I do not think the proof is sufficient to show he had acquired title in that way. I think there is no proof of the hostility of his claim; neither was his possession sufficient to give it notoriety and the proof is far from showing that it was exclusive. In fact, all the inhabitants of the town who cared to exercised the same privileges as plaintiff and his predecessors have done, so far as gathering gravel, seaweed, and driftwood upon this beach.

The plaintiff is entitled to judgment, decreeing that he is the owner of the premises in question, with costs.

Judgment for plaintiff, with costs.