**YOUNG et al. v. RUDD et al.**

No. 6481.

Court of Civil Appeals of Texas. Texarkana.

Jan. 5, 1950.

Rehearing Denied Jan. 19, 1950.

---

Bibb & Green, Marshall, for appellant.
J. N. Saye, Longview, for appellee.

LINCOLN, Justice.

This appeal involves primarily a construction of the instrument hereafter copied. The parties will be designated as in the trial court. On September 12, 1924, John W. Furrh and his wife executed and delivered to R. W. Norton an oil and gas lease on their lands, 245 acres of Joel Lipscomb Survey in Harrison County, Texas. Norton assigned the gas rights under the lease to State Line Oil and Gas Company on December 1, 1924. Both the lease and assignment were forthwith placed of record in Harrison County. There was some development and production on Furrh's land under the Norton lease but Furrh became dissatisfied because there was not further development. He insisted upon offset wells being drilled to prevent the gas under his land from being drained off by wells that were producing on adjacent lands. Having been unsuccessful in his efforts, on February 4, 1926, the following instrument was drawn up between Furrh, Bergson and Young:

"Know All Men By These Presents: That I, John W. Furrh, have entered into the following contract with Bert Bergson and William F. Young; the said Bergson and Young are to act for me as my agents and representatives in dealing with the Arkansas Natural Gas Co. and the State Line Oil and Gas Co. and any other persons interested in the leases on my land on the Joel Lipscomb Survey in Harrison County, Texas, near the town of Waskom. Said land being all of the land I own in said survey and being under lease at present to the Arkansas Natural Gas Company and to the State Line Oil and Gas Company, which last company acquired their lease rights from one Norton to whom I, the said John W. Furrh, leased said lands. The said Bergson and Young are to act for me as my agents and representatives in endeavoring to obtain additional development on all of said land on said Lipscomb Survey and in consideration of their services, they are to have and are hereby given and granted ten per cent of all future payments of rentals or royalties or bonuses on any and all future development on any of said land, including any and all offsets money that may be paid thereon.

\* \* \* \*. \* \*

"(Signed) John W. Furrh."
"We accept the foregoing contract:
"This the 4th day of February, A.D. 1926.
"(Signed) William F. Young
"Bert Bergson."

The foregoing contract was acknowledged by all the parties whose names were signed to it and was filed for record in the office of the county clerk of Harrison County on June 26, 1927, and was recorded in the deed records of said county.

Bergson and Young immediately entered into negotiations with the State Line Oil & Gas Company, and with the Arkansas Natural Gas Company. What interest the Arkansas company had in the lease and its

production is not shown. As a result of these negotiations, the State Line Company and the Arkansas Company paid bonuses to Furrh in lieu of offset wells, and also agreed to certain additional development on the land for the production of oil and gas. Bergson and Young received 10% of the bonuses and of Furrh's portion of the royalties.

On or about October 3, 1927, Furrh, Bergson and Young executed and delivered a transfer order to Magnolia Gas Company which stated that a 1/160 interest each in wells number one and up on 80 acres of the land involved had been sold to and was owned by Bergson and Young. The instrument directs that the Magnolia Gas Company will "show their interest on your books in keeping herewith" and states that the interests are correctly stated in the transfer, and the parties acknowledge themselves bound by the terms and provisions "of the original contract."

On March 26, 1929, J. W. Furrh and his children, his wife having died in the meantime, leased the land to C. H. Lyons, and on the same date a like oil and gas lease was executed in favor of Lyons by Bergson and Young, who negotiated the entire transaction with Lyons. Gas wells were drilled and commercial production secured under that lease.

Various division orders were executed, in all of which Bergson and Young each are shown to be the owners of 5% of the ⅛ royalty interest in said gas production. It was stipulated and the court found, that Bergson and Young began receiving 5% each of all the royalty from all the production on the lands described in plaintiffs' petition, from 1927, until Bergson's death, and thereafter Young and Bergson's wife continued to receive such percentages of royalty until the wells ceased production in 1947. The court found that the 10% of royalties paid to Bergson and Young and Mrs. Bergson was paid to them by the lessees or those holding under them and not by Furrh. It was stipulated that the division orders were executed by all the necessary parties to make them effective and that they pertained to the land in controversy.

The First National Bank of Marshall, Texas, acquired the land by foreclosure on July 26, 1933, and conveyed it to W. L. Rudd by warranty deed of November 29, 1933, which deeds were placed of record immediately following their dates. The deed from the First National Bank to Rudd expresses that it is made and accepted "subject to all outstanding oil, gas and mineral leases and the transfers and assignments thereof and thereunder, and any transfers of royalties in whole or in part that may have heretofore been made, in anywise covering and including the above described land."

W. L. Rudd and his wife executed an oil and gas lease on said land to J. F. Wright on January 3, 1945, and on March 23, 1945, a similar oil and gas lease was executed on said land to J. F. Wright by Young and Mrs. Bergson. These leases were transferred and assigned to Bert Fields, and drilling has resulted in production of gas and distillate in paying quantities. The leases to Wright and the assignments from Wright to Fields were duly placed of record in Harrison County.

By warranty deed of April 10, 1946, W. L. Rudd and wife conveyed the 245 acres of land to the defendants John Barry Rudd, W. L. Rudd, Jr., and Margaret Rudd Youngblood, children of W. L. Rudd. The suit was against them, their wives and husbands, and W. L. Rudd and his wife, grantors in the deed last mentioned, were also made defendants. The present owners of the land, appellees, rejected the asserted claim of appellants under the above copied instrument to any interest in the Bert Fields production, and this suit resulted.

It is not necessary to mention in detail the findings and conclusions of the court, nor to consider the requests of plaintiffs for additional findings and the action of the court thereon. There is no substantial dispute in the evidence. We deem it sufficient to show the following conclusions of the trial court:

(1) That the contract of February 4, 1926, was an agency contract only for the purpose of employing Bergson and Young to act as Furrh's agent in dealing with the Arkansas company and the State Line com-

pany and any other persons interested in the leases on Furrh's land in the Lipscomb Survey, to obtain development for oil and gas, for which services they "were given and granted 10% of all future payments of rentals, or royalties or bonuses on any and all future developments of any of the land, including any offset money that might be paid thereon."

(2) That said contract does not convey to Bergson and Young any interest in the oil, gas and other minerals in, under or that may be produced from said land, and that John W. Furrh thereby became a trustee for Bergson and Young to collect and account to them, their heirs and assigns, for rentals or royalties or bonuses mentioned in the contract.

(3) That said contract is not a covenant running with the land, did not restrict or limit the power of Furrh to sell and convey all or any part of the oil, gas and other minerals from the land, but did impose upon Furrh to account to Bergson and Young for their part of any bonuses which may be received as consideration for such sale.

(4) That plaintiffs have no right, title, interest or claim to any part of the oil, gas and other minerals in or under and that may be produced from said land.

(5) That defendants John Barry Rudd, W. L. Rudd, Jr., and Margaret Rudd Youngblood own the land in fee simple, subject to the J. F. Wright lease.

(6) Defendants are not estopped from contesting the claim of plaintiffs.

It is thus seen that the decision of this case turns upon the construction to be given to the contract of February 4, 1926. While that instrument does not conform to the model conveyance set forth in Art. 1292, R.S. of Texas, an examination of it discloses that it contains all the elements necessary in a conveyance of land under the statutes of conveyances of this state and the decisions of our courts. The statutes set forth the requisites and necessary proof of execution for conveyances of land, but it is further provided by Art. 1293, R.S., that "other forms not contravening the laws of the land shall not be

invalidated." No particular form is required in this state to convey title to land. Leal v. Leal, Tex.Civ.App., 4 S.W.2d 985, affirmed by the Supreme Court in 14 S.W. 2d 797; Baker v. Wescott, 73 Tex. 129, 11 S.W. 157. In Harlowe v. Hudgins, 84 Tex. 107, 19 S.W. 364, 365, it is said: "No precise technical words are required to be used in creating a conveyance. The use of any words which amount to a present contract of bargain and sale is all-sufficient. Whatever may be the inaccuracy of expression or the inaptness of the words used in an instrument, in a legal view, if the intention to pass the title can be discovered, the courts will give effect to it, and construe the words accordingly." This instrument is in writing, it was signed by the grantor, and acknowledged by him, as required by the statutes of conveyances. It was placed on record in the county where the land is situated. If it passes an estate in lands, such estate is in fee simple, since a less estate is not limited by any express words in the instrument, nor does a less estate appear to have been granted or conveyed by any construction that may be placed upon it nor by operation of law. Art. 1291, R.S. of Texas. It names the grantor and the grantees. It states an adequate consideration. In the granting clause the language of the instrument is that the grantees, Bergson and Young, "are to have and are hereby given and granted" the interest named therein. These are words of present conveyance and complete alienation. Hammett v. Farrar, Tex.Com.App., 29 S.W.2d 949; Sisk v. Random, Tex.Civ. App., 33 S.W.2d 1082, Id., 123 Tex. 326, 70 S.W.2d 689. It does not contain a warranty but none is necessary to a valid conveyance. Art. 1293, R.S. of Texas. In Harlowe v. Hudgins, supra, it is stated that "the word 'grant,' when used in an instrument, is construed as an operative word of conveyance." See also Art. 1297, R.S. In that case the following words had been written on the back of a deed: "I assine the within to Elizabeth Graham," etc. The alleged assignment was duly acknowledged. The Supreme Court held that it constituted a conveyance of the land described in the deed. In Spencer v.

Potter's Estate, 85 Vt. 1, 80 A. 821, it is said that while the primary meaning of the word "give" is to transfer ownership or possession without compensation, it has a secondary popular meaning of putting into another's possession on any terms, whether for a consideration or as a gift. In this instrument the consideration is clearly stated, but the point to be noticed is that by use of the word "give" the grantor intended to put ownership of something in the grantees.

In Evenson v. Webster, 3 S.D. 382, 53 N.W. 747, 748, 44 Am.St.Rep. 802, the grantor used this language in the instrument: "I * * * give him all of my goods and chattels and real estate." The Supreme Court of South Dakota held that the word "give" is sufficient to constitute a conveyance of real estate.

It is stated in 14 Tex.Jur., p. 771, that "if various words are used, such as grant, bargain, sell, release or confirm, the party receiving the deed may take whatever estate either of these words will convey." We think that the word "give" may also be included in the predicate. The rule is well recognized that if the language in a deed is doubtful it will be construed to convey to the grantee the greatest estate permissible under the instrument. Texas Creosoting Co. v. Hartburg Lbr. Co., Tex. Civ.App., 298 S.W. 645, affirmed by Supreme Court 12 S.W.2d 169; Summit Place Co. v. Terrell, Tex.Civ.App., 207 S.W. 145, affirmed by Supreme Court 232 S.W. 838. So also is the rule that a deed must be construed most strongly against the grantor and most favorably to the grantee. Stevens v. G., H. & S. A. Ry. Co., Tex. Com.App., 212 S.W. 639; Pitts v. Camp County, 120 Tex. 558, 39 S.W.2d 608.

What we have said above is sufficient to authorize the conclusion that the instrument under consideration meets all the requirements of a deed of conveyance, if the property or interest attempted to be conveyed thereby is real estate. The property is described as "ten per cent of all future payments of rentals or royalties or bonuses on any and all future development on ony of said land, including any and all

offsets money that may be paid thereon." It was the conclusion of the trial court that the interest in the rentals, royalties, bonuses or future development did not convey an interest in the minerals nor in the land. In this conclusion of law we think the trial court was in error. The decisions of this state have long held that the conveyance of an interest in oil, gas and other minerals in the land constitutes an interest in the land. See Tex.Jur., Vol. 31–A, p. 87, and authorities cited. Royalty, bonus and rentals under oil, gas and mineral leases constitute interests in the land, and they have well-defined meanings in the oil and gas industry. Waggoner's Estate v. Wichita County, 273 U.S. 113, 47 S.Ct. 271, 71 L.Ed. 566; State National Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W. 2d 757; Schlitter v. Smith, 128 Tex. 628, 101 S.W.2d 543; Tennant v. Dunn, 130 Tex. 285, 110 S.W.2d 53; O'Connor v. Quintana, 134 Tex. 179, 133 S.W.2d 112; Sheppard v. Stanolind Oil & Gas Co., Tex. Civ.App., 125 S.W.2d 643, writ of error refused.

In Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, the oil and gas lease purported, by its express terms, to sell and convey all of the oil, gas and other minerals in the land for the period and the purposes stated therein. As consideration it was stipulated that the grantors *"shall have"* (emphasis ours) a royalty of ⅛ of the gross production of oil and gas, and provided that such ⅛ should be paid over to grantors when the oil or gas was marketed from the land, payments to be made at specified intervals or whenever the grantee received payment therefor. The Supreme Court, in an able and exhaustive opinion by Judge Greenwood, held that the royalty interest named in the lease constituted the reservation of an interest in the land, even though such royalty was payable in money after marketing the product, and that it was not a mere personal covenant to be performed by the grantee.

The instrument now under consideration recites that the land referred to is under lease, and the evidence shows this to be an oil and gas lease. The lease provided for the payment of a royalty of ⅛

of the oil or gas produced from the land. Such royalty interest was the reservation of an interest in the land, under decisions cited. The instrument under review bears all the elements required for a conveyance of land. From the language used, and from all the surrounding circumstances, and from all the evidence, we must conclude that the parties understood that the grantor was passing to the grantees an interest in the horizontal strata of the land. If it was contemplated between them that such interest would be payable in money if and when the royalties were paid in money, yet under the decision in the Sheffield case the contract in favor of Bergson and Young was not a mere personal covenant, but the subject-matter of such contract under the apt terms of conveyance used was an interest in the land.

From 1927 until 1947, the original grantor and those holding under him, and all of the producing companies and the purchasers of gas dealt with this contract as a conveyance of an interest in the land. The division orders specified that Bergson and Young were the owners of 10 per cent of the royalty. Their interpretation of the contract which was at all times on record is strongly persuasive in this regard.

In describing the interest or property conveyed, the language of the contract is similar to that of the original lease. The Norton lease provided that the lessee should "pay the lessor ⅛ of the gas from each well where gas only is found." The language of the instrument now being construed is that Bergson and Young "are hereby given and granted 10 per cent of all future payments of rentals or royalties or bonuses on any and all future development on any of said land, including any and all offsets money that may be paid thereon." The delivery of ⅛ of the gas in pipelines to credit of lessor, or sale by lessee of the entire output and payment of the royalty in money, would have been "a payment of royalty." However, we think it may be judicially known that, at least in the production of gas from wells, the custom of the industry is to market the gas and pay the royalty or bonus in money. That was the manner in which all the transactions involved were handled in this case. The language of the contract is thus in consonance with the language of the lease as regards payment of the royalty and percentage of royalty on the gas production. We think there is no reasonable interpretation to be given to this contract other than that it was the intention of the grantor Furrh to convey to the grantees Bergson and Young 10 per cent of the interest he had so long as gas exists under his land. It thus became a covenant running with the land, and it is our conclusion that the instrument conveyed to Bergson and Young an interest in the horizontal strata of the land, unless it fails of that purpose by reason of the matter next discussed.

It will be observed that when the instrument speaks of rentals, royalties, bonuses, it uses the disjunctive "or" instead of the conjunctive "and." In Witherspoon v. Jernigan, 97 Tex. 98, 76 S.W. 445, 447, the court quotes with approval the following from Sutherland on Statutory Construction, Sec. 252: "The popular use of 'or' and 'and' is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context."

In Knox v. Lyarels, Tex.Civ.App., 155 S.W.2d 435, 439, the court said: "A part of the promised payment was to be the value of the property at the time of the sale which, of course, could not be determined in the absence of any sale. It seems to us the word 'or' introducing the provision 'or sells the same' should be construed to mean 'and.' The intention is clear that so long as the Grand Lodge owns the property the easement would continue. To give effect to such contention it is necessary and proper to construe the connective 'or' as 'and.' 17 C.J.S., Contracts, [§ 304], p. 722; 13 C.J. 532, § 489."

In the Pennsylvania case of Gibson v. Tyson, 5 Watts 34, the grantor reserved to himself all minerals or magnesia of any kind, and it was held that "or" meant "and" and hence there was a reservation of all of the minerals. In Town of Easthampton v. Vail, 151 N.Y. 463, 45 N.E. 1030, it is said that the word "or" is often used in deeds, conveyances and elsewhere in the place of "and," and will be construed to mean "and" where that meaning is apparent from the context. In White v. Crawford, 10 Mass. 183, it is said that "or" as used in a deed stipulating that the grantor "or" his heirs should have the privilege of a road to pass and repass from the highway, should be construed to mean "and"; that to effectuate the intention of the parties, it is not unusual to construe "or" as "and." And in Willis v. Robinson, 291 Mo. 650, 237 S.W. 1030, it is held that where the question of intent is under consideration, and it is evident from the entire context and circumstances of the deed that through inadvertence the word "or" was used instead of "and", the word "or" will be construed as "and."

 There is wide variance in the meanings of bonuses, rentals and royalties in connection with oil and gas conveyances and assignments. At any given time, as a general rule, only one of the component parts are produced. If one is receiving royalty he is not receiving rentals, and usually is not receiving bonuses. Royalty is no part of bonuses or rentals. In fact, neither of the three are any part of the others. It is obvious that the parties meant and intended to make a valid and effective contract. When Bergson and Young negotiated with the State Line company and with the Arkansas company for further development it was settled on a bonus basis and they were paid their 10% provided in the contract. There is no evidence that rentals have ever been paid under the leases referred to. Evidently none were due because development and production occurred immediately after the dates of the leases. Ten per cent of the royalties were paid to them 5% to each. It was therefore quite evident from the testimony and the whole record that Bergson and Young as grantees, and Furrh, as grantor, intended that "or" should be used as "and." All the division orders referred to assume, or at least imply, that interpretation of the contract. We must conclude that it was the intention of the parties that no such construction as would defeat the agreement should be given; that "or" should be used as "and," and that the conveyance is valid.

Plaintiffs assert error in the action of the trial court in his conclusion of law that defendants were not estopped from contesting the title and claim of plaintiffs under the instrument here under review, such plea having been filed by plaintiffs. In view of our holding as above set forth, it becomes unnecessary to pass upon this point of error. The defendants, as we understand the record, have rested their defense upon the contention that the instrument of February 4, 1926, was utterly futile and insufficient as a conveyance of an interest in the land.

The judgment of the district court is reversed, and judgment is here rendered in favor of the plaintiffs, appellants here, against the defendants for the interest sued for in the land described in the plaintiffs' petition.

HALL, C. J., disqualified and did not sit in this case.