

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

March 19, 1975

The Honorable Clayton T. Garrison
Executive Director
Texas Parks & Wildlife Department
John H. Reagan Bldg.
Austin, Texas 78701

Opinion No. H- 558

Re: Factors to be considered
by Parks and Wildlife Depart-
ment in adopting regulations
to protect wildlife.

Dear Mr. Garrison:

You have asked three questions concerning the duties of the
Parks & Wildlife Commission. You first ask:

> Is it the duty of the Parks and Wildlife Com-
> mission to consider each of the following factors
> prior to the adoption of wildlife regulations in
> accord with the Uniform Wildlife Regulatory Act:
> (a) Studies of the supply, (b) Economic value, (c)
> Environment, (d) Breeding habits and, (e) factors
> affecting the increase or decrease of the wildlife
> species?

Section 2 of the Uniform Wildlife Regulatory Act, article 978j-1,
Penal Auxiliary Laws, provides in pertinent part:

> In order to better conserve an ample supply of the
> wildlife resources in the counties to which this Act
> applies to the end that the most reasonable and
> equitable privileges may be enjoyed by the people
> of said counties and their posterity in their ownership
> and in the taking of such resources, it is deemed for
> the public welfare that this Legislature should provide
> a law adaptable  to changing conditions and emergencies

which threaten depletion or w a s t e of the wild-
life resources in said counties. The Parks and
Wildlife Commission is therefore granted the
authority, power and duty to provide by proclama-
tion, rule or regulation, from time to time, periods
of time when it shall be lawful to take a portion of the
wildlife resources in said counties or in any portion
of any of said counties when its investigations and
findings of fact disclose that there is an ample supply
of such wildlife resources that a portion thereof may
be taken which will not threaten depletion or waste
of such supply.

Under section 2 of the Act, the Commission has the duty to pro-
mulgate regulations providing for periods of time during which wildlife
may be taken. However, the statute also contemplates that such "open
season" times are to be declared when the investigations of the Commis-
sion disclose that the taking of wildlife at that particular time will not
threaten depletion or waste of the supply of the wildlife resources.

Section 4 of the Act discusses the investigations the Department
must make prior to declaring an open season:

It shall be the duty of the Parks and Wildlife
Department to conduct, from time to time, or
continuously, scientific research investigations and
studies of the supply, economic value, environment,
breeding habits and, so far as possible, the sex ratio
of the different species of wildlife resources as well
as the factors affecting their increase or decrease,
particularly with reference to hunting, trapping,
fishing, disease, infestation, predation, agricultural
pressure, over-population, and any and all other
factors that enter into a reduction or an increase in
the supply of such wildlife resources of this state.
Pursuant to and based upon such studies, said
Commission shall enter its findings of fact with

respect thereto, and if, in the opinion of the
Commission, an open season or period of time
may be safely provided for any of the wildlife
resources of said county, said Commission is
authorized and directed from time to time to
provide an open season or period of time when
such wildlife resources may be taken.

In our opinion, section 4 clearly requires the Department to
consider each of the factors listed in your question to determine whether
an open season may "safely be provided" for any wildlife resources.

You next ask:

Is it the duty of the Parks and Wildlife Department
to consider each of the following factors prior to
the issuance of a permit for the taking of marl,
gravel, sand, shell or mudshell:

a. Whether operation under the permit would
damage or injuriously affect any oysters, oyster
beds or fish inhabiting waters thereof or adjacent
thereto.

b. Whether such operation would damage or
injuriously affect any island, reef, bar,channel,
river, creek or bayou used for frequent or occa-
sional navigation or injuriously affect any current
that would affect navigation.

c. The requirements of industry for such
sedimentary materials and the relative value
thereof to the State of Texas for commercial
value?

Article 4053, V. T. C. S., provides the procedure whereby the
Parks and Wildlife Commission may issue permits to persons who seek

The Honorable Clayton T. Garrison   page 4   (H-558)

to purchase or remove marl, sand, gravel, shells or mudshell from waters within the Commission's jurisdiction.  Under section 1 of that article, such persons must first make a written application to the Commission for the permit.  The section then states that:

> If the Parks and Wildlife Commission finds that the taking, carrying away or disturbing of the marl, gravel, sand, shells or mudshell in the designated territory would not damage or injuriously affect any oysters, oyster beds, fish inhabiting waters thereof or adjacent thereto or that such operation would not damage or injuriously affect any island, reef, bar, channel, river, creek or bayou used for frequent or occasional navigation, or change or otherwise injuriously affect any current that would affect navigation, it may issue a permit to such person after such applicant shall have complied with all requirements prescribed by said Parks and Wildlife Commission.

Although the language of the statute is disjunctive, it is our opinion that the statute should be construed to require the Commission to find prior to issuing a permit that the operations under consideration do not injuriously affect any of the three mentioned areas: 1) oysters, oyester beds, fish inhabiting water thereof or adjacent to the operation; 2) any island, reef, bar channel, river, creek or bayou used for frequent or occasional navigation and 3) any current that would affect navigation.

In reaching this conclusion we are guided by the rule of statutory construction that unless there is no alternative, a statute will not be interpreted so as to lead to an absurd result.  McKinney v. Blankenship, 282 S. W. 2d 691 (Tex. Sup. 1955).  To construe the statute as requiring that the Commission find the operations under consideration will not injuriously affect only one of the three stated areas would lead to absurd results.  For example, if a person wished to remove sand from an area in a manner which clearly was not injurious to any currents affecting navigation, he would be able to qualify for consideration by the Commission

for a permit even though the removal of the sand might injuriously affect several reefs and destroy oyster beds. We do not believe the legislature intended such a result.

Our interpretation of the statute as conjunctive rather than disjunctive is further reinforced by Sutherland on Statutory Construction section 252 which states:

> The popular use of 'or' and 'and' is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context.

[cited with approval in Witherspoon v. Jernigan, 76 S. W. 445 (Tex. Sup. 1903) and Young v. Rudd, 226 S. W. 2d 469 (Tex. Civ. App. --Texarkana 1950, writ ref. n. r. e.)].

Thus, in our opinion, the Commission must not only consider the factors listed in part (a) and part (b) of your second question prior to issuing a permit under article 4053, but also the Commission may not consider issuing such a permit unless it finds that the operations satisfy the requirements listed in section 1 of that article.

Once the Commission has found that the operations under consideration satisfy the requirements of section 1, the Commission is then in a discretionary position. The statute states that the Commission "may" issue a permit to the applicant. At this point in the permit procedure, the Commission should be guided by section 2 of article 4053, which provides:

> In determining whether or not such permit should be issued, the Parks and Wildlife Commission shall take into consideration any injurious

effect which might occur to any oysters, oyster
beds, fish inhabiting waters thereof or adjacent
thereto, as well as the requirements of industry
for such marl, sand, gravel, shells or mudshell
and the relative value thereof to the State of Texas
for commercial use.

Thus, in answer to part (c) of your second question, the Commission must consider prior to the issuance of a permit the requirements of industry for the sedentary materials and the relative value thereof to the State of Texas for commercial use.

Your final question is whether:

In the exercise of its general authority over the
various species of wild animals, birds and fish
within this State, does the Parks and Wildlife
Commission have the duty to consider both economic
as well as environmental factors when establishing
policy guidelines for the Department?

The Parks and Wildlife Commission when establishing policy guidelines for the Department, should, like any other department, establish policies which comport with the specific statutes which give the Department its jurisdiction over wildlife resources. Absent your providing us with a particular set of guidelines promulgated pursuant to a particular statute, we are unable to answer your question.

### SUMMARY

It is the duty of the Parks and Wildlife Commission
to consider each of the factors listed in section 4 of
the Uniform Wildlife Regulatory Act prior to the
adoption of wildlife regulations. Under article 4053,
the Commission must consider prior to issuing a
permit for the taking of marl, gravel, sand, shell
or mudshell, all of the factors cited in section 1 of

that article.  If the requirements of section 1 are met, the Commission in deciding whether to issue a permit, must then consider the factors listed in section 2 of article 4053.  The Commission, when establishing policy guidelines for the Parks and Wildlife Department, must establish policies which comport with the specific statutes which give the Department its jurisdiction over wildlife resources.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

lg